372

C. H. CARR et al., Complainants, v. R. H. WILBANKS
et al., Defendants. —324 S. W. (2d) 786.

Western Section, at Jackson. May 7, 1958.

Certiorari denied by Supreme Court December 12, 1958.

374

Will Tom Abernathy, Selma, Ross & Ross, Savannah, for appellants.

E. J. Harris, Bolivar, for appellees.

AVERY, P. J., (Western Section). In this cause we are faced first, with the determination of whether or not this is a boundary line suit, such as is authorized by Sections 16-607 et seq., T. C. A., wherein it is unnecessary to deraign the title back to the grant or a common source, or whether it is a suit in ejectment which does require deraigning the title back to a grant or to a common source. If the issues turn purely upon the allegations and prayer of the original bill and the allegations of the answer thereto, it would be easy to determine the type of cause, for it is nowhere alleged in the original bill

that the suit is brought as a boundary line suit, as provided for in said Section 16-607 et seq., T. C. A., and the prayer to the original bill does not pray for the establishment of a boundary line.

The original bill simply avers that complainants, C. H. Carr, Mrs. Ester Carr Sutton and Mrs. Elizabeth O. Harper are the owners of the fee and that Mrs. B. C. Carr is the owner of a dower interest in several tracts of real estate, one of which is a tract containing 200 acres and which is the subject of the controversy, and that it is located in the ——— Civil District of McNairy County, Tennessee, and then it is described only by the boundaries of adjoining landowners and the recitation:

"Being the same conveyed to B. C. Carr by L. C. Russell shown of record in Deed Book 9, page 39, Register's office of McNairy County, Tennessee.

"Said deed is filed herewith and marked Exhibit A to the bill.

"The said tract of land is fully described by metes and bounds as founded on Entry No. 2569, grant from the State of Tennessee, No. 14767 to Mary P. Kirk as recorded in Volume 19, Register's office of Jackson, Tennessee, now at Nashville, Tennessee, certified copy will be filed on or before the hearing. The said description is as follows:

"Situated in Range 1, Section 1, of McNairy County, Tennessee, Beginning at a stake with black oak and white oak pointers 160 poles north of the most eastern N. E. C. of Entry No. 1401 in the name of James E. Rosson; runs south 160 poles to a stake 2 black and chestnut pointers; then west 200 poles to

a hickory and 2 hickory pointers; thence north 160 poles to a stake with sweet gum, maple and 2 white oak pointers; thence east 200 poles to the beginning.''

The original bill then sets forth the contention of the complainants as follows:

"That as set out above the complainants are also the owners of lands lying east, south and west of the above described 200 acre tract and that said land was owned by B. C. Carr and J. W. Wardlow in 1922 when there was a land procession and corrected description of the lands known as the Nuckols tract made by J. S. Kirk, Deputy Surveyor of McNairy County, Tennessee, which reestablished a portion of the south boundary of what is known as the Morphis tract and now owned by the defendant, R. H. Wilbanks. The said survey being shown of record in Book 16, page 371, Register's office of McNairy County, Tennessee and will be filed on or before the hearing of this cause.

"Complainants state that they and their predecessors in title have been open, notorious and exclusive of said 200 acre tract of land by the original grant from the State of Tennessee to the said Mary P. Kirk. That in October 1955 the defendant, R. H. Wilbanks acquired title to the tract of land lying north of the complainants said 200 acre tract known as the Morphis tract of land. That many years ago the line between the complainant and defendant which is the north boundary line of the complainants and the south boundary line of the defendant was plainly hacked and about 8 years ago the complain-

ant had said line marked with red paint and that for several years the complainants have sold and cut timber on the said tract to the said hacked and marked line and there has been no dispute as to the title or controversy as to the boundaries until a few weeks ago the said R. H. Wilbanks encroached upon the said complainants land and south of said marked and hacked line by cutting timber, and damaging the said land and claiming it as his own. That the said defendant has also painted a new line south of the above old hacked and marked line which the complainants aver is the true boundary line and has undertaken to take possession of said land and cut valuable timber thereon which constitutes an irreparable injury to said land and said defendant has threatened to place a saw mill on said lands and cut and remove all valuable timber therefrom and complainants aver that if not restrained the said defendant will continue to encroach upon said land and cause irreparable damage thereto by cutting and removing valuable timber therefrom."

The prayer of the bill is then for:

"1. That process issue * * *.

"2. That defendant be enjoined from cutting any additional timber or committing any other waste on said tract of land lying south of the said old hacked and painted line.

"3. That the title and right of possession of said land be decreed to the complainants and they be put into possession of said land by decree of said court.

"4. That the complainants be given a decree for the value of all trees cut on the said land by the defendant and that full damage be allowed the complainants for all waste and damage done by the defendant and an account be taken to ascertain the amount of damage done by cutting said trees and waste and injury to said land.''

The answer admits that L. C. Russell conveyed to B. C. Carr a tract of land bounded by adjoining landowner's boundaries, and said to contain 200 acres, and admits that the land described in Deed Book 9, at page 39 in the Register's Office of McNairy County, which shows the deed from L. C. Russell to B. C. Carr conveys said tract, with the following description:

"* * * in the 1st civil district of McNairy County, Tennessee, known as the Mary P. Kirk tract and described as follows; bounded on the north by P. J. Morphis, on the east by S. H. Russell; home place and J. R. Eaves land; on the south by Nuckols land and on the west by J. L. Rosson land now owned by Thomas Shae, and said to contain 200 acres more or less.''

The answer then avers that all deeds in the chain of title to the above described tract of land contain the same boundary description as above set out back to a certain deed from B. C. Carr and wife, Lizzie Carr, to W. J. Tipler, dated March 23, 1897, recorded in Book X, page 270, and that beyond that date there is a break in the chain of title and no deed whereby the land was conveyed to B. C. Carr is shown of record. It is admitted that there was a processioning of certain lands as shown in Book 16, page 371, but denies that this processioning re-established the south boundary of the Morphis tract,

since the land referred to as the Morphis land was conveyed by metes and bounds description and it is further averred that the tract in question lies along the southern boundary line of the Morphis land description, and that defendant is the owner of the land lying immediately north of the B. C. Carr tract, and which is part of the Morphis tract described as follows:

"Beginning at the northeast corner of Entry No. 2569 in the name of Mary P. Kirk at a stake, black oak and white oak pointers; thence west 228 poles to an ash with black gum pointers; thence north to Moses Creek; thence in a northwesterly direction with the meanders of Moses Creek to a stake, two poles east of the northwest corner of this tract and on the north boundary line of said tract; thence east 58 poles to hickory, chestnut and black oat and water oak pointers; thence north 20 poles to a hickory and southwest corner of Entry No. 1834 in the name of Nancy Ingram; thence east 116 poles to the southeast corner of the same; thence south 137 poles to the beginning containing 150 acres more or less."

He states that said land was conveyed to him by Mack J. Marbury and wife by deed dated October 12, 1955, and recorded in Book 48, pp. 411-412, and is a part of the land conveyed and granted by the State of Tennessee to Sarah Morphis by grant dated August 1, 1859, and recorded in Book 20, page 305, in the Register's office of McNairy County, which is described in said grant as follows:

"A certain tract or parcel of land containing 142 acres by survey bearing the date the 5th day of January, 1854 lying in said county, Range 1, Section 1,

beginning at the northeast corner of Entry No. 2569 in the name of Mary P. Kirk at a stake, black oak and white oak pointers; runs west 276 poles to a hickory and 2 black oak pointers, A. E. Thornton's southeast corner; then north 117 poles to a stake S. D. Suttons southwest corner; thence east 60 poles to a hickory, black oak and white oak pointers; then north 20 poles to a hickory the southwest corner of Entry No. 1834 in the name of Nancy Ingram; thence east 216 poles to the southeast corner of the same, thence south 137 poles to the beginning.''

He then avers that the line running east and west on the south side of his land marches with the north boundary of the B. C. Carr tract and ''that his south boundary line as determined by survey and measurements must be the north boundary line of B. C. Carr alleged to be owned by the complainants.'' He then avers that in April 1941 B. C. Carr conveyed a part of the tract which he acquired from J. C. Kirk by deed recorded in Book 31, page 362, in the Register's Office of McNairy County, to K. R. Trainum, and in that deed fixed ''the northeast corner of the defendants' tract of land at point 60 poles north of the old R. F. D. Route No. 2'', and that complainants are bound by this corner; that the south boundary line of defendants' tract of land, formerly part of the Morphis tract, can be run and fixed by beginning at the northeast corner of the Morphis tract, as fixed by Carr, as complainants' predecessor in title in said deed above referred to, beginning 60 poles north of the old R. F. D. Route No. 2, running south from said northeast corner 137 poles, as called for in the Morphis deed and then running west 228 poles as called for in defendants' deed; that when the defendants' northeast corner has thus been

established and the lines run as aforesaid, the south boundary line of defendants' land will be fixed, which will likewise fix the north boundary line of complainants' land, for the first call in their deed reads: "bounded on the north by F. J Morphis".

The answer then denies that the complainants and their predecessors in title have been in possession of the land back to the original grant; that the line was never plainly hacked unless done so by a trespasser but that some person did paint a red line across the land in an effort to fix a boundary, which was not the true boundary.

The answer denies that he has done any injury to any of complainants' land by cutting timber thereon, and avers that "the land on which he cut timber was within the boundaries of the land embraced in his deed and that his south boundary line is approximately 30 rods south of the red line claimed by the complainants."

There was no demurrer filed to the bill, and while complainants' bill and the original prayer thereto standing alone would, of necessity, have to be classed as an ejectment suit, by the terms of the answer the defendants, for all practical purposes, admit that the complainants' action is a boundary line suit and was apparently so definitely understood by him.

The case was heard before the Chancellor on oral testimony. There appears to be no written agreement in the record and in the bill of exceptions is the following recitation:

"Be it remembered, that the above entitled case came on for trial, and was heard on the 7th day of November, 1956, before the Honorable Wayne A.

Cox, Chancellor, on oral proof,—there being present the defendant, R. H. Wilbanks in his own person, his attorney, the Honorable Will Tom Abernathy, C. H. Carr, the complainant in his own person and his attorney of record, the Honorable E. J. Harris, when and where the following orders, rulings and proceedings were had, to-wit:

"The pleadings were read to the Court and thereupon the following evidence was introduced and heard by the Court, to-wit:"

The first sentence in the Chancellor's written memorandum is as follows:

"This is a boundary dispute, the complainants own certain lands including a 200 acre tract conveyed to B. C. Carr by I. C. Russell in 1912."

And the first sentence in the decree is as follows:

"This cause came on to be heard this November 7, 1956, before the Hon. Wayne A. Cox, Chancellor, upon the original bill, the answer of the defendant and oral proof introduced in the case by stipulations under the rules of Chancery and taken under advisement."

Before the first question was asked the first witness, the Court inquired of counsel for the parties:

"IS THERE ANY QUESTION IN THIS EXCEPT THE LOCATION OF THE LINE?"

That question was answered by Mr. Abernathy, counsel for defendant, with the following statement:

"THAT IS THE SOLE ISSUE AS I UNDERSTAND IT." (Capitalized for emphasis.)

Then after some further remarks, not essential to the issue, the witnesses were examined.

For the first time in the entire proceedings, the question that the original bill constitutes an ejectment suit has been raised in this Court. That question was raised by counsel who has been employed since the filing of the memorandum and decree of the Chancellor. The Chancellor decrees:

"It is therefore ordered, adjudged and decreed by the court that the complainants are the owners in fee of the tract of land described in the bill situated in the ——— civil district of McNairy County, Tennessee, it being the same land granted by the State of Tennessee to Mary P. Kirk, grant No. 14767 and that complainants have the right to possession thereof. It is further ordered that the true boundary line between the said tracts of land owned by the complainants and the tract of land owned by the defendant lying north of the complainants said tract, and being a portion of Grant No. 14876 to Sarah Morphis is along the old hacked line and as painted with red paint several years ago and along the processional survey between the said lands made in 1922."

Thereafter, the decree orders a reference to the Master to take proof as to the quality and quantity of timber cut and removed from the tract south of that line.

Exceptions were properly taken and appeal prayed, and acting within his discretion the Chancellor granted that appeal to this Court, which was perfected, and it is now ready to be disposed of by this Court.

With the record as above stated, the assignments of error are in number six but taken collectively they raise only: (1) The question that the Chancellor was in error in establishing the disputed line as shown by his decree; and (2) He erred by decreeing that the complainants are the owners in fee of the tract of land described in the bill, known as the Mary P. Kirk Grant No. 14767, and they and their predecessors in title have been in open, notorious and exclusive possession of the 200-acre tract since it was granted to Mary P. Kirk in 1854, which contains the area in dispute.

■■ With the pleadings, admissions of counsel, the Court's memorandum and decree, as referred to, and the statement of counsel at the hearing that "the sole issue as I understand it" is the location of the boundary line (statement quoted verbatim on page 324 of 790 S. W. (2d)) we think it would be inequitable between the parties to reverse the Chancellor and dismiss the bill, for if we did so, certainly the complainants would have the right to have the bill dismissed without prejudice and proceed in ejectment in an effort to obtain the relief sought by them in their original bill. This Court will not permit the defendant to now take an inconsistent position from that taken before the Chancellor on the trial of the cause and thereby succeed at this time on the record now appearing.

By Section 16-602, T. C. A., which originates with the Acts of 1877, Chapter 97, the Chancery Court has jurisdiction in ejectment lawsuits concurrently with the Circuit Court.

In Frazier v. Browning, 79 Tenn. 253, 254-255, the Supreme Court, in discussing the nature of the suit, said:

"It is, in fact, an ejectment bill, or an action of ejectment in the chancery court. This being so, the court of chancery, by the act of 1877, has the same jurisdiction as the circuit court. The matter being of legal cognizance, the chancery court, by this act, has concurrent jurisdiction with the court of law in such a case."

By Sections 16-606 and 16-607, originating with the Acts of 1915, the Chancery Court also has jurisdiction in boundary line lawsuits. Therefore, had the contention been made before the Chancellor by defendant, that the suit was one in ejectment, the complainants, had they chosen to do so, certainly would have been entitled to amend their original bill, so as specifically to aver the suit to have been instituted under said Sections 16-606 and 16-607 as a boundary line suit. Carter v. Pickwick Greyhound Lines, 166 Tenn. 200, 203-204, 60 S. W. (2d) 421; Campbell v. Illinois Cent. Railroad Co., 84 Tenn. 270-273.

■■ In a suit, purely a boundary line dispute, where the title on either side of the boundary line is questioned, the statute specifically requires the complainant to establish his title by a clear preponderance of proof, and while this case comes to this Court with the presumption that the decree of the Chancellor is correct unless the evidence preponderates against it, we cannot fail to take into consideration the implication of the exact provisions of Section 16-607, T. C. A., which is as follows:

"In all such cases a complete deraignment of title by the complainant from a state grant or common source of title shall not be required as in ejectment cases, but it shall be sufficient to establish title in

complainant, *that he prove clearly that he is the true owner of the lands described in his bill."* (Emphasis added.)

This simply means that the complainant must prove that he is the true owner or that he had become entitled to the possession of land adjacent to the boundary which he undertakes to have established, — that is, the disputed area of land, by clear proof, and in such an action the Chancellor would be confined to a determination by such clear proof,—if he rested his decree upon title, to decree title only to the particular disputed area. As will be shown hereinafter, the learned Chancellor did not confine his decree to any such area. Notwithstanding the fact that the parties and the Chancellor understood at the outset of the trial before any testimony was introduced, that this was a boundary line lawsuit, the proof clearly shows the fact that it was an ejectment suit, and it was so tried. Generally, the nature and character of a case is determined from its pleadings independent of the manner of trial and proof offered, but in this cause the nature and kind of cause is not only revealed by the pleadings, but also by the manner of trial indulged in by counsel for each party and the proof offered on behalf of each party, all or either of which classify this suit as one in ejectment. See Union Tanning Co. v. Lowe, 148 Tenn. 407, 412, 413, 255 S. W. 712.

The proof shows that the defendant Wilbanks in 1955 obtained a deed to certain lands which were carved out of an original grant to one Sarah Morphis in 1859, the entry thereof having been made in 1849. His deed is from one Marbury and wife and is filed as Exhibit 1 to the testimony of R. H. Wilbanks. Plat No. 4 described in that

deed is the one involved. The description apparently called for 150 acres, but the deed expressly excludes 35 acres, a part of which is contained within the description of Tract No. 4 and which would leave him approximately 115 acres in that tract. His deed is by descriptive dimensions except where the line strikes a creek and then it simply runs with the meanderings of a creek, the distance not being stated.

It is the contention of the complainants that they own the entire area embraced within a grant to Mary Kirk in 1854, the entry having been made in 1847. They say their title is a life estate or dower interest in Mrs. B. C. Carr, widow of B. C. Carr, deceased, with the fee vested in the other complainants, among them complainant C. H. Carr. They claim the land by inheritance from B. C. Carr and that their title thereto results from a deed executed to B. C. Carr by L. C. Russell and wife in October 1912. That original deed is filed as Exhibit A to the direct examination of C. H. Carr. The description in that deed is pertinent to the issues because the land conveyed is only described by the adjoining landowners and recites that it is the Mary P. Kirk tract.

The real dispute, therefore, is with respect to the lands along the south boundary of the tract owned by defendant Wilbanks and the north boundary of the tract owned by complainants. The complainants and the defendant, in an effort to prove their respective contentions, have introduced photographic copies of the following grants and entries:

A grant dated October 12, 1829, to one Cader Lea, to whom the entry of Samuel Nicholson of 100 acres was assigned and granted.

A grant dated 1847 to one Joseph S. Rosson of 571 acres.

A grant dated 1854 to one William Eves, of 194 acres.

A grant dated 1854 to one John R. Eves, of 122 acres.

A grant dated 1848 to John Kirk, of 446 acres.

A grant dated 1849 to Nancy Ingram, of 171 acres.

A grant dated 1859 to Sarah Morphis containing what is said to be only 142 acres, the description in which is pertinent as contended by the parties, and is copied in the second quote on page 4 of this opinion. [324 S. W. (2d) 789.] While this grant recites that it conveys "one hundred & fortytwo acres", its description actually figures 228 plus acres.

Now the parties have undertaken to establish this area in dispute between the Kirk land and the Morphis land as it relates to the marching lines of the parties, by filing the plats said to contain all these descriptions in these certified copies of grants. There is one contention by complainants that this line can be located by what he calls a processioning survey made by one J. S. Kirk in 1922, the original of which is filed with the record as Exhibit C to the direct examination of C. H. Carr, and is specifically referred to in both the Court's memorandum and in his decree. In his memorandum the Court said:

"This survey is very persuasive evidence in support of the contention of the complainants. The testimony of R. L. Ray removes all doubt in the mind of the court that the complainants are entitled to the relief they seek."

In the Chancellor's decree, he states that the disputed area is

"a portion of Grant No. 14876 to Sarah Morphis is along the old hacked line and as painted with red paint several years ago and along the processional survey between the said lands made in 1922."

A careful examination of this referred to processional survey clearly shows that the boundary line along which the disputed area lies was not surveyed by the surveyor making that processional survey. This survey, in part, follows the opposite boundary (southern boundary) of the Mary P. Kirk tract, but not the northern boundary thereof, and it does not embrace the Mary P. Kirk granted area.

It is our opinion that the processional survey furnishes no proof of any consequence, and if it did it could only show a disputed area of 3½ poles wide by 200 poles long, where as the complainants contend that the disputed area is 20 poles wide and approximately 200 poles long.

Four large charts were filed by the parties, two of which purport to show the larger part of these lands granted to and around the Morphis and Kirk lands. It is further the contention of complainants and their witnesses that because of the fact that the Sarah Morphis grant is a junior grant to that of the Mary Kirk grant, and that the east boundary of the Morphis land, now owned by Wilbanks, is said to be 137 poles long as shown by the grant, and the Wilbanks deeds and other deeds filed, it is in fact 20 poles shorter than the 137 poles, but the calls in the original grant of Sarah Morphis cannot harmonize with such contention.

It is the contention of the defendant that the south end of the 137-rod east boundary of the Morphis grant, now defendant Wilbanks, extends 20 rods into the Kirk grant, now owned by Carr. This is sought to be shown by the fact that the father of complainant C. H. Carr, who owned the fee at one time, established by his deed a corner at or near a road which is some 60 poles north of the northeast corner of the Morphis grant, and to start from that point at the road and run thence the 60 poles south, the said northeast corner of the Morphis tract is located, thence following the east boundary of the Morphis grant south 137 poles, the southeast corner of the Morphis grant is located, and that the south end of this 137 pole line is 20 poles south of the northeast corner of the Kirk grant now belonging to complainants. This contention cannot be sustained by the calls in the several grants, several deeds, or the processional survey referred to.

It is very clear to this Court that notwithstanding the fact that the Chancellor thought he was trying a boundary suit only and that complainants and defendant agreed with him, all the proof developed into an ejectment action.

■ Where a boundary dispute results in a suit, even when it is begun under the provisions of the boundary statute and develops into an ejectment action, and the defendant "failed to establish an actual, open, notorious, exclusive and hostile possession for the required statutory time, he could not get title by adverse possession." Stearns Coal & Lumber Co. v. Kitchen Lumber Co., 1944, 27 Tenn. App. 468, 182 S. W. (2d) 4.

The writer has read and re-read some three or four times this entire record and made a synopsis of the testimony of each witness which could be considered material from any viewpoint, and it is obvious that neither party has shown that type of possession and control of the alleged disputed area which justifies the Chancellor, or would justify this Court, giving full consideration to the presumption of the Chancellor's decree, in determining that either party has had such.

The record clearly shows that the disputed land is open land. There is some evidence of an old fence at some point which may have been on a part of the disputed boundary line, but there is no evidence that any fence ever was erected along either one of the disputed boundary lines,—that is to say, along the north boundary of the Kirk tract or the south boundary of the Morphis tract. The proof shows that the area in question,—that is, the disputed strip which apparently is about 20 poles wide and 200 poles long, and the land on either side of it has been almost an open area to the adjoining landowners as timber land and that timber has been cut therefrom during some of the last forty years by the persons who claimed to own it, but only by Wilbanks since he bought it in 1955. The witnesses and the lawyers, in an effort to establish their contentions, all go back to these old grants. There is some evidence of a painted line along what is said to be the north boundary of the disputed area of several years duration. There is some evidence that some of the trees near this painted line did show some line marks, hacks, etc. but when all of the record is considered, the only positive identification of any corner or line is an iron stake sticking in a crater, where witnesses say there once stood a hickory tree marked as a

corner, and this stake is shown to be at the most northerly northwest corner of the Morphis tract, and at the north end of a 20-pole offset in the north line of the Morphis grant.

The complainants have failed to prove clearly that they are the owners of the land described in their bill, which is disputed, and have failed to prove that they and their predecessors in title have had open, adverse, actual and notorious possession of that disputed strip of land for such a time as would give them title to it, or to give them a possessive right to maintain their suit. Neither has the defendant shown that he and his predecessors in title have had such possession of the disputed strip.

It is evident from the record that the complainants have failed to deraign their title back to a grant or common source, and notwithstanding the statutory provision that the decree of a Chancellor is presumed to be correct unless the evidence preponderates against him, we are constrained to say:

(1) That in trying this suit the Chancellor erred in undertaking to decree title in the complainants to the land covered by the Mary Kirk grant.

(2) He was in error in finding that the complainants had proved clearly, as provided by Section 16-607, their title or possessory right to the disputed area.

(3) That he should have discovered that this cause was being tried as one in ejectment where superior title prevails, based upon the facts revealed before him.

Since the cause should be remanded regardless of how this Court should determine the issues before it, and

since it is here on a discretionary appeal, to be further pursued to whatever final decree the Chancellor may make with respect to damages when the cause is finally determined, and in order that neither complainants nor defendant be prejudiced, the contention being made for the first time in this Court that this is an ejectment action, on authority of the opinion of the Superior Court of this State in Union Tanning Company v. Lowe, 148 Tenn. 407, 255 S. W. 712, the assignments of error are sustained only to the extent of remanding this cause to the Chancery Court of McNairy County, there to be proceeded to a conclusion by the Chancellor as a suit in ejectment, if the parties so desire, upon the pleadings as they now appear, and on the proof as it now appears, or such amended pleadings and other proof as the parties may offer and the Chancellor permit, and without prejudice to the rights of either party.

 In an ejectment suit, the complainant must stand or fall by proving a title in him back to a common source or to the grant. Upon the record before us, we would not say that complainant could not do that, and when defendant led the Court in believing that suit was being determined only by a boundary line dispute, complainant should not be deprived of his right to complete his title by the proper proof if he can do so. He shows the grant in which complainants' land lies, but by the record here there is a hiatus in his title between his deed and the grant.

By Section 27-329, T. C. A., it is provided:

"Remand for correction of record.—

"The court shall also, in all cases, where, in its opinion, complete justice cannot be had by reason of

some defect in the record, want of proper parties, or oversight without culpable negligence, remand the cause to the court below for further proceedings, with proper directions to effectuate the objects of the order, and upon such terms as may be deemed right."

In the case of Cowan v. Dodd, 43 Tenn. 278, our Supreme Court, being dissatisfied with the evidence before it, said:

"We will, therefore, reverse the Decree of the Chancellor, and remand the cause to the Chancery Court, at Greeneville, to the end that the parties may have an opportunity of adducing any additional proof that they may be able to, upon the issues arising upon the amended bill."

See also: Grider v. Harbison, 46 Tenn. 208, 209; Carver v. Crocker, 43 Tenn. App. 636, 1957, 311, S. W. (2d) 316.

The costs in this Court, including the costs of the transcript prepared by the Clerk and Master, will be equally divided between the complainants and defendant, the comlpainants to be taxed with one-half thereof and the defendant taxed with one-half thereof. The other costs in said Chancery Court, including the costs that may hereafter accrue in this cause, will be adjudged by the Chancellor in his final disposition of this lawsuit.

Carney and Bejach, JJ., concur.