IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 29, 2001 Session

AUDIE LOWE, ET AL. v. BILL GOAD, ET AL.

Appeal from the Chancery Court for Scott County
No. 8289      Billy Joe White, Chancellor

FILED JUNE 22, 2001

No. E2000-02056-COA-R3-CV

Audie Lowe, Hilda Lowe, and Sheilda Mills ("Plaintiffs") brought this boundary line suit against members of their family, Bill Goad, Mattie Goad, Eugene Olmstead, and Mae Olmstead ("Defendants"). Plaintiffs allege their predecessor-in-title, Arlie Overton, had an agreement with Defendants' predecessor-in-title, Sherman Overton, that a fence ("Fence") would serve as the boundary line. Plaintiffs' deed does not include the disputed area up to the fence. After a trial, the Trial Court dismissed Plaintiffs' complaint, holding that the Fence was not the boundary line by agreement or acquiescence. Plaintiffs appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;
Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, J., and CHARLES D. SUSANO, JR., J., joined.

Stephen A. Marcum, Huntsville, Tennessee, for the Appellants, Audie Lowe, Hilda Lowe, and Sheila Mills.

Johnny V. Dunaway, LaFollette, Tennessee, for the Appellees, Bill Goad, Mattie Goad, Eugene Olmstead and Mattie Olmstead.

# OPINION

## Background

This matter involves a boundary line dispute between family members over an area consisting of approximately 9 acres ("Disputed Area") located in Scott County. The Disputed Area is a wooded, mountainous area located adjacent to another parcel of property that is primarily pastureland. The parties to this litigation are the children and grandchildren of Sherman Overton and their spouses. Sherman is the father of Arlie Overton, Arvil Overton, Mae Olmstead and Mattie Goad.[1] The Plaintiffs are Arlie's daughters, Sheilda Mills and Hilda Lowe, and Hilda Lowe's husband, Audie Lowe. The Defendants are Sherman's daughters, Mattie Goad and Mae Olmstead, and their spouses, Bill Goad and Eugene Olmstead.

In 1942, Arvil purchased two parcels of property near his father's farm in Scott County. Thereafter, in 1962, Arvil sold a portion of this land to his father, Sherman, and the rest to his brother, Arlie. Sherman, who died in 1980, is the Defendants' predecessor-in-title. Arlie is the Plaintiffs' predecessor-in-title. The parcels encompass pastureland and the Disputed Area and were separated by an old fence ("Fence") which was replaced by Arlie and Arvil sometime near the time of the transfer. By deposition, Arvil testified that his father wanted the pastureland for himself and wanted Arlie to have the wooded, mountainous area. Accordingly, Arvil sold the parcels to Sherman and Arlie. Arvil, however, admitted that he did not change the legal description in the deeds that he received when he purchased the two parcels in 1942. The deed that Sherman received from Arvil apparently did not state the amount of acreage in his parcel, but Arvil testified that he sold Sherman between 8 and 10 acres. Arlie's deed showed that he received 25 acres from Arvil.

In 1984, Arlie deeded his 25 acre parcel to his son, Dennis. In 1985, Dennis deeded the 25 acres to Plaintiffs. In 1998, Plaintiffs filed this Complaint for Declaratory Judgment, alleging that they were the owners of the Disputed Area under the theories of adverse possession and prescriptive easement. Plaintiffs agreed, at trial, to dismiss their adverse possession claim but proceeded under the theory that the Fence was the boundary line by agreement or acquiescence between Arlie and Sherman.[2] Arlie, Arvil and the Defendants provided testimony at trial via deposition only.

The record on appeal shows that Arlie and Arvil testified that the Fence was the boundary line and that Arlie and Arvil restricted their use of the land to their respective sides of the Fence. On the other hand, Defendants testified that they never knew the location of the boundary line and that Arlie's and Sherman's use of the property was not restricted to one side of the Fence or the other. It is, however, undisputed that Plaintiffs have no deed covering the Disputed Area. It

---

[1] For clarity's sake and to minimize confusion, we refer to Sherman Overton and his two sons, Arlie and Arvil, by their first names only.

[2] The record on appeal makes no mention of the disposition of Plaintiffs' remaining alternative claim of prescriptive easement.

also is undisputed that in early 1999, less than one month after Plaintiffs filed their complaint, Arlie gave a warranty deed ("1999 Warranty Deed") to Defendants covering the disputed area. Additionally, one of the Defendants, Mattie Goad, testified that approximately two years prior to the instant litigation, Arlie asked some of the family members to give the Disputed Area to him via a quit claim deed.

Moreover, sometime prior to this lawsuit, a partition action ("Partition Action") regarding Sherman's farm was brought between Sherman's children. The record on appeal in this matter provides sketchy information regarding the Partition Action and does not contain any pleadings or a judgment from the Partition Action. The Trial Court, however, in its Opinion, found that a consent judgment in the Partition Action had been entered between the parties in which Arlie and Arvil participated. The consent judgment and a corresponding deed placed the Disputed Area into Sherman's property.

At trial, each side presented expert witness testimony from land surveyors. Both surveyors agreed that Plaintiffs' deed does not cover the Disputed Area. Plaintiffs' surveyor, Richard Reece ("Reece"), testified that the calls of the deeds involved did not close but that he located the 25 acre plot that is covered in the deed that Plaintiffs received from Dennis. Reece testified that he examined the Fence and found that it skirts three sides of the Disputed Area and had been built on Arlie's side instead of Sherman's side. Reece agreed that its appearance was consistent with a fence that had been standing for 30 years but that it had been maintained.

Defendants' surveyor, Jerry Crutchfield ("Crutchfield"), performed two surveys. The first survey ("First Survey") apparently was prepared for the earlier Partition Action and resulted in a finding that the Disputed Area belonged to Arlie. Like Plaintiffs' surveyor, Crutchfield testified that the calls of the deeds involved did not close and further testified that most of the landmarks or points were no longer on the property. After submitting the First Survey to the court in the Partition Action, Crutchfield received a telephone call from a third-party who advised Crutchfield about a point that had been missed in the First Survey.[3] Using this point, Crutchfield re-surveyed ("Second Survey") and concluded that Arlie's property did not include the Disputed Area. In explaining his conflicting findings, Crutchfield testified that the First Survey was a mistake and that he felt more comfortable with the Second Survey. Moreover, Crutchfield reviewed the 1999 Warranty Deed that Arlie had given to Defendants and concluded that it covered the Disputed Area.

The Trial Court, in its Judgment, dismissed Plaintiffs' Complaint and found that Defendants were the owners of the Disputed Area. In its Opinion, which was incorporated into the Judgment, the Trial Court held that it did not give great weight to Arlie's testimony because Arlie testified that he had difficulty with his memory since he had suffered a stroke. The Trial Court further held that since Plaintiffs had no deed to the Disputed Area, their only claim was based upon the parties' predecessors' alleged agreement regarding the boundary line. Citing Arlie's transfer of

_____

[3] The record on appeal does not contain any clear indication of the third party's relationship to the parties or how he obtained knowledge about the point.

the Disputed Area to Defendants in 1999, and Arlie's participation in the Partition Action's consent judgment, the Trial Court dismissed Plaintiffs' complaint after finding that these events were evidence that Arlie knew that there was no agreement regarding the boundary line.[4] Plaintiffs appeal. We affirm.

## Discussion

On appeal and although not stated exactly as such, Plaintiffs raise the following issues: 1) the Trial Court erred in refusing to hold that the Fence was the boundary line by agreement or acquiescence; 2) the Trial Court erred in finding that Arlie's execution of the 1999 Warranty Deed and his participation in the Partition Action's consent judgment were fatal to Plaintiffs' claim; and 3) the Trial Court erred in excluding the testimony of three of Plaintiffs' witnesses for Plaintiffs' failure to timely identify these witnesses. Defendants, of course, do not dispute the Trial Court's dismissal of Plaintiffs' complaint and do not raise further issues on appeal.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the Trial Court, unless the preponderance of the evidence is otherwise. Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d 689, 692 (Tenn. 1998). The Trial Court's conclusions of law are subject to *de novo* review with no presumption of correctness. *Ganzevoort v. Russell,* 949 S.W.2d 293, 296 (Tenn. 1997).

Although Plaintiffs' complaint does not provide that they proceeded under Tenn. Code Ann. § 16-11-106, that statute sets forth the burden of proof in a boundary line dispute. Tenn. Code Ann. § 16-11-106(b) provides that in a boundary line case, a plaintiff must "prove clearly" that he is the true owner of the land at issue. *Carr v. Wilbanks*, 324 S.W.2d 786, 792 (Tenn. Ct. App. 1958); *Burks v. Boles*, 934 S.W.2d 653, 654-55 (Tenn. Ct. App. 1996). In this matter, although the Trial Court did not expressly state that it followed Tenn. Code Ann. § 16-11-106, it is apparent from its Opinion and Judgment that it found that Plaintiffs did not prove clearly that they were the true owners of the Disputed Area.

From the record on appeal, we hold that the evidence does not preponderate against the Trial Court's factual finding that the Fence is not the agreed upon boundary between Sherman's property and Arlie's property. *See* Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d at 692. Since the witnesses' accounts of the location of the boundary line and Arlie's and Sherman's use of the Disputed Area were conflicting, the Trial Court, in part, based its decision upon the credibility of the witnesses. The credibility of Arlie is crucial to Plaintiffs' proof. The Trial Court specifically stated in its opinion that it could not give great weight to Arlie's testimony, especially in light of Arlie's admitted difficulties with memory related to his previous stroke.

---

[4] In their Answer, Defendants asserted a defense of *res judicata*, but the Trial Court stated in its Opinion that it was not going so far as to find that the consent judgment was *res judicata* on the issue. Additionally, the Trial Court held in its Opinion that the Disputed Area was covered by Sherman's deed.

-4-

It is true that Arlie, along with Arvil and the Defendants, testified by deposition only, and this Court is in as good a position as the Trial Court to "evaluate the credibility of witnesses who testify by deposition." *Riddick v. Jackson Metal Serv., Inc.*, No. 02S01-9703-CV-00016, 1998 WL 135484, at * 2 (Tenn. Sp. Work. Comp. Panel Mar. 25, 1998); *Henson v. City of Lawrenceburg*, 851 S.W.2d 809, 812 (Tenn. 1993). We hold, however, that even upon a "fresh" review of Arlie's deposition testimony, we agree with the Trial Court's assessment of Arlie's credibility. We acknowledge that Arlie's testimony, which is corroborated by Arvil, was that he owned the Disputed Area and that he, Sherman and Arvil recognized the Fence as the boundary. Arlie, however, contradicted that testimony and further testified that he did not recall giving a deed to his son, Dennis, for the 25 acre parcel. Moreover, Arlie readily admitted that he had difficulty with his memory since suffering a stroke approximately fifteen years ago, and his testimony frequently demonstrated his trouble with recall of events.

We also agree with the Trial Court's determination that Arlie's execution of the 1999 Warranty Deed, his participation in the 1997 consent judgment and deed, and the testimony that Arlie attempted to obtain a quit claim deed for the Disputed Area further weaken Plaintiffs' claim. The Trial Court held that this proof showed Arlie's awareness that he did not have an agreement that the Fence was the boundary. This proof, along with Arlie's credibility problems, supports the Trial Court's determination that Plaintiffs failed to prove that the Fence was the boundary line by agreement.

Moreover, it is apparent that in rendering its decision, the Trial Court relied heavily upon the testimony of Defendants' surveyor, Crutchfield, and thus, found Crutchfield to be more credible than Plaintiffs' surveyor, Reece. "Unlike this Court, the [T]rial [C]ourt observed the manner and demeanor of the witnesses and was in the best position to evaluate their credibility." *Union Planters Nat'l Bank v. Island Mgmt. Auth., Inc.*, 43 S.W.3d 498, 502 (Tenn. Ct. App. 2000). The Trial Court's determinations regarding credibility are accorded deference by this Court. *Id.*; *Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560, 563 (Tenn. 2001). "'[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary.'" *Wells v. Tennessee Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999).

Accordingly, we hold that the evidence does not preponderate against the Trial Court's finding that there was no agreement that the Fence was the boundary between Arlie's and Sherman's property. *See* Tenn. Rule App. P. 13(d); *Alexander v. Inman,* 974 S.W.2d at 692.

With respect to Plaintiffs' remaining issue on appeal regarding the Trial Court's exclusion of three of their witnesses, we find no reversible error. Appellants concede that the decision whether or not to allow these witnesses to testify was within the sound discretion of the Trial Court. We find no abuse of this discretion by the Trial Court. Further, we hold that even if the Trial Court's exclusion of those witnesses constituted error, the exclusion did not "more probably than not [affect] the judgment or . . . result in prejudice to the judicial process." Tenn. R. App. P. 36(b).

In their Reply Brief, Plaintiffs also raise issues regarding Defendants' allegations of facts unsupported by the record in their appellate brief. We agree with Plaintiffs that in numerous instances, Defendants' citations to the record in support of their factual allegations are not supported by the record. Factual assertions must be supported by evidence in the record. Tenn. Ct. App. R. 6(b); *Sorrel v. Henson*, No. 02A01-9609-JV-00212, 1998 WL 886561, at * 2 n.3 (Tenn. Ct. App. Dec. 18, 1998). Defendants' factual assertions not supported by evidence in the record were not considered by this Court in arriving at our decision. We hold, however, that the Trial Court's decision that Defendants are the owners of the Disputed Area is adequately supported by what actually is contained in the record on appeal.

## Conclusion

The judgment of the Trial Court is affirmed. This cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellants, Audie Lowe, Hilda Lowe and Sheilda Mills, and their surety.

_____
D. MICHAEL SWINEY, JUDGE