IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2002 Session

## JOE MORGAN, ET AL. v. BARBARA NELL GOOD (GRIMES)

**Appeal from the Chancery Court for Rutherford County**
**No. 99CV-820      Don R. Ash, Chancellor**

_____

**No. M2001-00683-COA-R3-CV - Filed September 3, 2002**

_____

Plaintiffs filed suit against Defendant in order to determine the true boundary line and ownership of one-half acre of property adjacent to both Plaintiffs' property and Defendant's property. The trial court determined that the boundary line cut diagonally across the disputed property giving approximately one-quarter acre to Plaintiffs and one-quarter acre to Defendant. Plaintiffs appealed asserting that they are the true owners of the entire one-half acre and that the trial court was in error when it established the diagonal boundary line splitting the disputed property. We agree with the trial judge's determination of the boundary line and affirm the chancery court's opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

WILLIAM B. CAIN, J., delivered the opinion of the court, in which PATRICIA J. COTTRELL, J. and IRVIN H. KILCREASE, JR., SP. J., joined.

Robert G. Wheeler, Jr., Nashville, Tennessee, for the appellants, Joe Morgan and Donna Morgan.

John H. Baker, III, Murfreesboro, Tennessee, for the appellee, Barbara Nell Good (Grimes).

**OPINION**

I.      Factual History.

This dispute arose over one-half acre of property lying between real property owned by Plaintiffs, Joe and Donna Morgan, and Defendant, Barbara Nell Good. Plaintiffs own approximately five acres of land purchased in 1996. Defendant owns approximately one and one-half acre of land purchased in 1993. The disputed one-half acre lies along the boundary between properties owned by Plaintiffs and Defendant, on Plaintiffs' east side and Defendant's west side.

Plaintiffs claim title to the disputed one-half acre based on their 1996 deed. The description

in this deed was based on a 1976 survey that showed the one-half acre to be included in the approximately five acres purchased by Plaintiffs. Defendant bases her claim to the one-half acre on the allegation by the former owner of both parcels of property, Mr. B. M. Hall, that he retained ownership of the one-half acre until 1999, at which time he quit claimed the one-half acre to Defendant.

The dispute over this property arose following a new 1998 survey. An old, partially torn down, barbed wire fence ran between the one and one-half acre parcel owned by Defendant and the half acre parcel in question. Plaintiffs believed the half acre to be theirs and had the land surveyed in order to establish the appropriate boundary lines and re-fence the property. Following the survey, they determined that a structure owned by Defendant was on "their side" of the property line, within the half acre in question. They requested that Defendant move this building. Defendant claimed that the building and the property in question belonged to Mr. B. M. Hall, her grandfather. Thus, after the dispute arose, Mr. Hall quit claimed this disputed area to Defendant. Plaintiffs then sued for a determination of ownership and correct boundary lines.

All of the land owned by Plaintiffs and Defendant, including the one-half acre in question, was, at one time or another, owned by Mr. B. M. Hall. Various parcels owned by Mr. Hall were deeded back and forth between family members numerous times over the years. The five acre parcel was once part of a ten acre tract of land purchased by Mr. Hall sometime between 1960 and 1963. The deed showing his purchase of this land was not included in the record; however, the boundary lines of the original ten acre parcel are not in dispute.

The one and one-half acre parcel of land was once a part of a two acre parcel purchased by Mr. Hall in 1960. The boundary lines of the original two acre parcel are also not in dispute and are designated in Mr. Hall's 1960 deed by merely referencing the roads and other properties bounding the two acres. In 1963, Mr. Hall owned both the five and two acre parcels of land and deeded the two acre parcel for the first time. This deed contained a more detailed property description than his 1960 deed, establishing the northern and southern property lines to run 420 feet west from Buckeye Bottoms Road. This deed reads as follows:

> Fronting 210 feet on the west side of Buckeye Bottoms Road, and running back westward between parallel lines *420 feet* to B. M. Hall property; bounded on the north by Percy Hall; on the east by Buckeye Bottoms Road; on the south by private roadway leading from Buckeye Bottoms Road to the residence of B. M. Hall; and on the west by B. M. Hall, containing two (2) acres, more or less and being the same lands conveyed to the undersigned by J. T. Davenport and wife by deed of record in book 134, page 472, Register's Office, Rutherford County, Tennessee.

The same two acres were deeded back to Mr. Hall in 1967. At this point, Mr. Hall once again owned both the ten acre plot and the two acre plot adjoining it. The one half acre in question was then a part of the two acre plot adjoining the east boundary line of the ten acre parcel. On the same day, Mr. Hall conveyed to his daughter, Ruth Good, one and one-half acres of the two acre plot. The

deed evidences the northern and southern boundary line of the one and one-half acre plot to be then running 300 feet westward from Buckeye Bottoms Road. Thus, Mr. Hall retained one-half acre between the parcel deeded to his daughter and the ten acres he also owned. The one-half acre in question had a northern and southern boundary approximately 120 feet long and a eastern and western boundary approximately 210 feet long. The property description of the one and one-half acres given to his daughter read as follows:

> Fronting 210 feet on the west side of Buckeye Bottoms Road, and running back westward between parallel lines 300 feet; bounded on the north by Percy Hall; on the east by Buckeye Bottoms Road; on the south by a private roadway leading from Buckeye Bottoms road (sic) to the Hall residence; *on the west by B. M. Hall*[1]; containing one and one/half (1 ½) acres, more or less, and being a part of the lands conveyed to B. M. Hall and wife, Mindia Hall by Bobby Young and wife, Evelyn Marie Young, by deed dated April 18, 1967, and of record in Deed Book No.174, page 524, Reg. Office, Rutherford County, Tennessee.

The testimony in the record reflects that in 1968 Mr. Hall and his wife Mindia Hall separated and he deeded approximately ten acres to her and his son, Randy Hall, on November 21, 1968. This transfer is the point where problems began regarding ownership of the one-half acre, as the 1968 deed apparently includes the one-half acre in the ten acres deeded to Mindia Hall and Randy Hall. The property description states as follows:

> Bounded on the north by Percy Hall, John Good, and Davenport; *on the east* by Percy Hall, *John Good*[2], and Buckeye Bottoms Road[3]; on the south by Patton and Stockard; on the west by John Stockard; containing 10 acres, more or less, and being a part of the lands conveyed to B. M. Hall and wife, Mindia Hall, by James T. Alsup and wife by deed of record in Deed Book 137, page 359, Register's Office, Rutherford County, Tennessee.

The one-half acre in question is on the east side of this parcel of land and would have been between the ten acres and property owned by John Good.

The one and one-half acre changed hands three times between 1969 and 1993, when Defendant obtained the property. In all three deeds, 1969, 1974, and 1993, the property description is essentially the same:

---

[1]This west boundary adjoins the east boundary of the one-half acre. The property owned by Plaintiff adjoins the west boundary of the one-half acre.

[2]John Good owned the one and one-half acre parcel to the east.

[3]B. M. Hall is not listed as an owner of property anywhere on the east side of the ten acres as he would be if he had retained the one-half acre.

Fronting 210 feet on the west side of Buckeye Bottoms Road and running back westward between parallel lines 300 feet; bounded on the north by Percy Hall; on the east by Buckeye Bottoms Road; on the south by a private roadway leading from Buckeye Bottoms Road to the Hall residence; and *bounded on the west by Mindia Hall*, *formerly B. M. Hall*, containing one and one-half (1-½) acres, more or less, . . .

In 1974, Mindia Hall and Randy Hall deeded five of the ten acres to a Mr. William Murray. In this deed, the final call of the description extends eastward and does not appear to turn back south to close the property description. In order to close the description as written, the property line would have to run southeastward "to the beginning." This southeast running boundary is the same property line drawn by Judge Ash in deciding this case. The 1974 deed states as follows:

Bounded on the north by property now, or formerly owned by Davenport and Percy Hall; *on the east by Hall and John Good*; on the south by a road and Hall and on the west by Hall; containing five (5) acres more or less; and more particularly described as follows: *Beginning on a stake at the SE corner of this tract, and the SW corner of John Good lot*, thence with road and Hall property, westward 617.6 feet to a stake in line of Hall Property; thence with Hall lands northward 395 feet to a stake in line of said Davenport property; thence eastward with said Davenport line 489.6 feet to a stake in the west line of Percy Hall property; thence with said Percy Hall line southward 208 feet to a stake; thence *eastward* 137 feet *to the beginning*; . . .

In 1976, the same five acre piece of property was conveyed to Mr. Everett Baute using the same property description as the 1974 deed. Mr. Baute had a survey performed after he purchased the property in 1976, and, when he sold this property in 1980 to Mr. Frank Keeling, he used the 1976 survey description encompassing the entire one-half acre. In 1996, Plaintiff purchased the five acre parcel based on the 1976 survey showing the whole one-half acre to be included.

After a hearing, the judge found that "[t]he boundary line between the parties' property shall run diagonally from the Northwest corner of the land owned by Percy Hall to the Northeast[4] (sic) corner of the land owned by John Good as reflected by the attached survey." He based his ruling on the 1974 deed conveying the five acres to Mr. Murray out of Mindia Hall and Randy Hall's ten acres. He determined that the final call directing "thence eastward 137 feet to the beginning" was a mistake in distance and that "to the beginning" intended to close the property regardless of the exact distance or direction. He then drew the line diagonally approximately 239 feet southeastward, "to the beginning." In this regard, the court stated as follows:

This is what I'm going to do. Mr. and Mrs. Morgan, now it's Mrs. Grimes, the problem I've got is - - Mr. and Ms. Morgan, this isn't your fault, to be quite honest. I had a deed back here in 1974, right around there, and it says clearly

[4]As evidenced by the judge's "attached survey," this description should state the "southeast" corner of John Good's land.

4

what the land's supposed to be.  And we can argue about whether it's 137 yards or 200 yards, but the deed says clearly it goes back thence eastward 137 feet to the beginning.  It doesn't say straight down, it doesn't say anything like that.  It says to the beginning.  And I'm going to take that at its word.  I've got to do that, because all of us have different memories.

And then I've got the same problem over here with Ms. Grimes, because her deeds, they just changed them too.  As the deed says, it goes up to this one property, and doesn't have the distance on it.  Then the next time it goes to 412 feet.  And I asked who changed it, nobody knows who changed it.  It just got changed.  And that's the problem.  So what - - and I don't believe adverse possession is appropriate.  I'm not going to find that's an appropriate remedy in this case.

So what I'm going to do is, I'm going to find that Mr. and Ms. Morgan, you-all own the property from this corner point right up here, diagonally across to the other part.  That means you get the property where the trailer was.  You may have a problem with this metal building or metal house, or whatever that is out there.  That may be a problem.  I'm going to find that, in fact, should be the property line.

With regard to the claim of adverse possession, the court went on to find:

It wasn't open, it wasn't continuous, there's no way they got knowledge of it, it's - - if I take your theory, if I take your theory out in the country, and a lot of this space used to be country, if somebody does a wrong survey - - and I'm going to find specifically that this survey that this fellow came up with was wrong, there's no basis for it, based upon my reading of this - - and that if I take your theory, somebody goes out and makes a wrong survey, and it lays there for 20 years, it becomes somebody else's property.  I may be wrong, but I don't think that's what the law is.

Plaintiffs presented three issues for review claiming that (1) they are the true owners of the disputed property since Mr. Hall divested himself of the one-half acre in 1968 and there is no evidence that Hall retained ownership of the disputed property after 1968; (2) the trial court erred in drawing the diagonal boundary across the disputed land, and (3) even if Plaintiffs were not the lawful owners of the disputed one-half acre, they have subsequently acquired this land by adverse possession.

II.      Standard of Review.

Boundary disputes are determined by the chancery court based on Tennessee Code Annotated section 16-11-106.  This section states "it shall be sufficient to establish title in complaint where the complainant proves clearly that the complainant is the true owner of the lands described in the complainant's bill."  Tenn. Code Ann. §16-11-106(b)(2001).

In a suit brought pursuant to T.C.A. § 16-11-106, the complainant is not

required to prove a complete deraignment of title from the state nor to prove a common source of title but is required to prove clearly that he is the true owner of the property described in the complaint. As pointed out in *Carr v. Wilbanks*, 45 Tenn. App. 372, 386, 324 S.W.2d 786, 792 (1958), this simply means:

> [t]hat the complainant must prove that he is the true owner or that he had become entitled to the possession of land adjacent to the boundary which he undertakes to have established. . . .

> Since this case was tried by the court sitting without a jury, we review the case de novo upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

> Any conflict of testimony requiring a determination of the credibility of witnesses rests in the first instance with the trial court and will be given great weight by the appellate court, unless other real evidence compels a contrary conclusion.

*Franks v. Burks*, 688 S.W.2d 435, 437-38 (Tenn. Ct. App. 1984).

Thus, unless the evidence preponderates against the trial court's findings, we must affirm the trial court's ruling, but "[w]here the evidence preponderates against the finding of the chancellor, it is our duty to enter such decree as the law and evidence warrant." *Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980).

III.     Determination of Boundary Lines.

The law of boundary line disputes is well settled and was eloquently explained by the Tennessee Supreme Court in 1916.

> The general rule is that in determining boundaries resort is to be had, first, to natural objects or landmarks, because of their very permanent character, next, to artificial monuments or markers, then to boundary lines of adjacent owners, and then to courses and distances. But this general rule, as to the relative importance of these guides to the ascertainment of a boundary of land, is not an inflexible or absolute one.

> The use of the rule is as a means to the discovery of the intention of the parties. To arrive at the intention of the parties to the instrument is the purpose of all rules of construction, and this applies to the description of premises conveyed as well as to other parts of the instrument.

*Pritchard v. Rebori*, 186 S.W. 121, 122 (Tenn. 1916).

6

The primary and fundamental rule to which all others relate and must yield is that the intention of the parties gathered from the whole instrument, taken in connection with surrounding circumstances, must control.

We must therefore, in arriving at the true intention of the parties, conform to those rules which have been long recognized as best calculated to accomplish that end, bearing in mind, too, that there are exceptions to these rules, and that sometimes it is apparent that the true intention of the parties does not conform to the conclusion which a strict adherence to the rules of interpretation would require.

. . . .

A just and reasonable rule which the courts have long followed in harmonizing conflicting calls in a deed or survey is to ascertain which calls are locative, and which are merely directory, and conform the lines to the locative calls. Directory calls are those which merely direct the neighborhood wherein the different calls may be found; whereas locative calls are those which serve to fix the boundaries. Therefore locative calls control in case of conflict. It is less likely that a surveyor or the parties to the instrument under interpretation would make a mistake in describing the exact boundaries than when merely calling attention to the neighborhood in which they should be found.

If the conflict be between locative calls, then those referring to natural or fixed objects prevail over those for course and distance, unless this results in an absurd conclusion, and one which from the whole instrument and other competent evidence was one that was manifestly not intended. This is upon the principle that in determining the boundaries of a tract of land it is permissible to disregard calls when they cannot be applied and harmonized in any reasonable manner, and thus reject a call which is manifestly false or mistaken.

*Cates v. Reynolds*, 228 S.W. 695, 696 (Tenn. 1921) (citations omitted).

It should also be noted that "the overriding purpose of all rules of construction is the ascertainment of the intention of the parties. This is done by considering the deed as a whole without regard to formal divisions and parts, and by giving all words in the deed their usual and appropriate meaning." *Rolen v. Rolen*, 423 S.W.2d 280, 282 (Tenn. Ct. App. 1967) (citations omitted). It is also a well settled rule that "in the absence of ambiguity or irreconcilable conflict in the provisions of a deed, parole evidence is not admissible to contradict, add or explain the provisions of the deed." *Id.*

The difficulty begins with the March 11, 1974 conveyance from Mindia and Randy Hall to William Murray and wife. The last call in the description is "thence eastward 137 feet to the beginning." In order for this line to get to the beginning, which was "a stake in the SE corner of this

7

tract, the SW corner of John Good lot, . . ." the distance in this call would have to be 239 feet rather than 137 feet. This same problem was carried forth in the September 21, 1976 deed from Murray to Everett Baute and wife. Shortly after he purchased the property, Everett Baute had the land surveyed, and his surveyor ran this last call line, not to the beginning as the Hall and Murray deeds had provided, but rather 136.9 feet in an easterly direction to a "pin in F.C." From this latter point, in order to close to the beginning, the surveyor added a final call "south 16 degrees 43 minutes west 194.1 feet" to reach the beginning. In so doing, the surveyor encompassed within the Baute tract the entirety of the one-half acre in issue. Baute then, in his conveyance in 1980 to Frank Keeling, used the 1976 survey description in conveying the property rather than the description contained in the deed from Murray to Baute. In the December 18, 1996 conveyance from Frank Keeling to Plaintiff, Joe Morgan, the same description from the 1976 survey was used.

Thus, we have a deed to Baute that either left out a final call and distance to close or erroneously stated the distance to close to be 137 feet rather than 239 feet. There is no evidence in the record to support the action of the 1976 surveyor enclosing the property description by adding an additional call not included in the deed of conveyance by which Baute received the property.

The chancellor made his determination based on the 1974 deed from Hall to Murray and the 1976 deed from Murray to Baute, thus running the final call diagonally across the disputed land 239 feet "to the beginning." The chancellor correctly applied the rules of deed construction and parol evidence in an effort to determine the true boundary line, determined that "to the beginning" prevailed over the 137 feet distance as reflected in the final call, and ran the line 239 feet to the point of beginning.

Defendant bases her claim to the entire one-half acre on the allegation that her grandfather, B.M. Hall, retained this one-half acre. But, due to the unambiguous property description in the 1968 deed conveying ten acres to his wife and son, it is obvious that Mr. Hall retained no such portion of the property.

The scant evidence in the record relative to the possession and use of this disputed property during the years is insufficient to provide a basis for open, notorious, exclusive, adverse use that would support adverse possession, and the chancellor correctly so held.

The judgment of the trial court is in all respects affirmed and costs are assessed to the appellant.

_____
WILLIAM B. CAIN, JUDGE

8