**S.B. FRANKS and Ovid L. Cossey and wife Linda A. Cossey,
Plaintiffs-Appellees,**

v.

**Oscar BURKS and wife Kathy Burks,
Defendants-Appellants.**

Court of Appeals of Tennessee,
Western Section, at Jackson.

Dec. 19, 1984.

Application for Permission to Appeal
Denied April 1, 1985.

James A. Hopper, Savannah, for plaintiffs-appellees.

Charles C. Peterson, Waynesboro, for defendants-appellants.

CRAWFORD, Judge.

The plaintiffs, S.B. Franks, Ovid L. Cossey and wife, Linda A. Cossey, sued defendants Oscar Burks and wife Kathy Burks pursuant to T.C.A. § 16–11–106 to establish boundary lines and for damages. The Franks' land adjoins the Burks' property on the south and the Cossey land adjoins the Burks' land on the north. From an adverse decree, Burks appeals presenting two issues for review by this court: (1) whether the court erred in establishing the boundary lines and (2) whether the court erred in awarding Cossey punitive damages.

In addition to testimony of the parties and lay witnesses, the evidence includes testimony of three surveyors—two, Cagle and Baker, for the plaintiff, and one, Coleman, for the defendant. We will briefly review their testimony.

Cagle, the first to testify, established that he had twenty years of experience surveying and that in 1980 or 1981 he had been called to survey what is now the defendant's land and to determine the acreage contained within that plot of land. He stated that he had determined that there were 42.47 acres therein and that he had prepared a map of his tracings establishing both the Burks' northern and southern boundaries. He testified that the boundaries had already been marked on the ground when he did the survey and that he had observed points and blazed lines and corners established by an iron pin and a pine knot. He also stated that he had access to a survey previously prepared by Baker, that he had read all of the surrounding property deed descriptions, and that he had used the natural and artificial markers as well as the previous survey and deed descriptions to draw his plat.

Baker, the second surveyor to testify, stated that he had first surveyed the area involving the Burks northern boundary in 1976 at which time he had found "blazed lines" that had been painted by a previous surveyor. He testified that at that time the then owners of the property agreed as to the boundary lines. He stated further

that he had prepared a survey for Cossey when he bought the 17 acres that he (Cossey) now owns and had established the same Burks northern boundary at that time. Continuing his testimony, Baker stated that in 1979 he had surveyed the 42 acres now owned by defendant Burks at which time he had marked and re-marked all the boundaries of that plot of land by following fences, and observing the pine knot and the iron pin noted previously. He described how in 1982 he had gone out again to mark the southern boundary prior to defendant Burks conveying a small part of his land to his brother Travis Burks. Baker stated that he had established the southern boundary again and had re-marked and repainted lines at that time. Finally, in 1983, Baker resurveyed the land for plaintiff Franks and found the Burks southern boundary to be in the same place it had been previously. Baker's testimony concluded with the following questions and answers:

Q. Did you have any trouble either time you've been out there surveying this property to find the Burks' property, the Franks' property and the Cossey property as far as the evidence on the ground?

A. No, sir, I didn't think so at the time.

Q. To you it was clear?

A. Yes, sir. As I have stated the first time I surveyed the property I talked to the owners and *they agreed on the line* and the line was painted and I didn't even anticipate a lawsuit or anything four or 5 years later.

Q. Likewise as to Mr. Burks when you did the Travis Burks' deed this last year you again showed the same line as being the south boundary line of the Travis Burks tract?

A. Yes, sir.

The third surveyor, Coleman, testified as the defendants' witness. He went into great detail concerning the location of various lines bounding the Burks' property and described markings and monuments located on the land. He pointed out discrepancies in the deeds affecting the properties in controversy, but the inconclusiveness of his testimony is best illustrated during his cross-examination:

Q. You don't know what [sic] your testifying here today is the correct line of Burks, do you?

A. I haven't testified to where the correct line of Burks is located at.

Q. Do you know where it is?

A. I know where I think it may be.

Mr. Coleman also conceded that the description in the Cossey deed established the Burks' northern boundary line as presented by surveyors Baker and Cagle.

At the conclusion of the proof the court found that the correct boundary lines were those shown by the surveys of Cagle and Baker as established by agreement of the former owners, by reference to physical and artificial monuments and by painting, marking and blazing of trees.

■ In a suit brought pursuant to T.C.A. § 16–11–106, the complainant is not required to prove a complete deraignment of title from the state nor to prove a common source of title but is required to prove clearly that he is the true owner of the property described in the complaint. As pointed out in *Carr v. Wilbanks,* 45 Tenn. App. 372, 386, 324 S.W.2d 786, 792 (1958), this simply means

[t]hat the complainant must prove that he is the true owner or that he had become entitled to the possession of land adjacent to the boundary which he undertakes to have established....

Since this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

■ Any conflict of testimony requiring a determination of the credibility of witnesses rests in the first instance with the trial court and will be given great weight

by the appellate court, unless other real evidence compels a contrary conclusion. *See State ex rel. Balsinger v. Town of Madisonville*, 222 Tenn. 272, 282, 435 S.W.2d 803, 807 (1968); *Linder v. Little*, 490 S.W.2d 717, 723 (Tenn.App.1972).

In determining disputed boundaries, resort is to be had first to natural objects or landmarks because of their permanent character, next to artificial marks or monuments, then to boundary lines of adjacent land owners, and then to courses and distances. *Thornburg v. Chase*, 606 S.W.2d 672 (Tenn.App.1980).

An unascertained or disputed boundary line dividing the lands of adjoining property owners may be established by a parol agreement between the land owners, and the agreement does not fall within the prohibition of the statute of frauds. *Thornburg v. Chase, supra; Webb v. Harris*, 44 Tenn.App. 492, 315 S.W.2d 274 (1958). Such an agreement may be shown as well by circumstances and recognition as by direct evidence of a formal agreement where the parties have acted thereon. *Galbraith v. Lunsford*, 87 Tenn. 89, 99, 9 S.W. 365 (1888).

As heretofore noted, three surveyors testified in this case, and the Chancellor had the benefit of observing the surveyors as they testified concerning their activity in locating the boundary lines on occasions prior to the dispute between the present parties. We must consider the weight to be given to the Chancellor's determination concerning the credibility of these witnesses. Cagle's and Baker's surveys relied most heavily on natural landmarks and artificial monuments. Based upon the proof, the court found that a line had been established by virtue of activity among the former owners and that the proof from the surveyors in this regard sufficiently established the true boundaries by a preponderance of the evidence. From our review of the record we cannot say that the evidence preponderates against the finding of the Chancellor. Accordingly, the decree of the Chancellor establishing the boundary lines is affirmed.

We will now consider the second issue presented for review—whether the court properly awarded punitive damages.

Burks asserts that at most the timber was cut inadvertently and there was no intention on his part to cause any damage or trouble to any one else. The record leaves little doubt that there were discrepancies in the deed descriptions, some confusion as to monuments and blazings, and in general some difficulty in pinpointing the boundaries on the land itself. Burks testified that he knew of problems concerning his northern boundary line and for that reason told the timber cutters to stay out of the disputed area. Nevertheless, the timber cutters apparently wandered into this area causing the damage for which compensatory and punitive damages were awarded.

Punitive damages are awarded in cases involving fraud, malice, gross negligence or oppression, or where a wrongful act is done with bad motive or so recklessly as to imply a disregard of social obligation, or where there is such willful misconduct or entire want of care as to raise a presumption of conscious indifference to the consequences. *Underwood v. State*, 529 S.W.2d 45 (Tenn.1975).

We have examined the record and find nothing therein to indicate the presence of the essential elements necessary to justify an award of punitive damages.

Accordingly, we affirm the decree of the trial court establishing the boundaries and awarding compensatory damages and reverse the decree as to punitive damages. The case is remanded to the trial court for such further proceedings as are necessary and costs are assessed against the appellant and the appellee equally.

NEARN, P.J. (W.S.), and HIGHERS, J., concur.