# IN THE COURT OF APPEALS OF TENNESSEE
## WESTERN SECTION AT NASHVILLE

**FILED**

**November 19, 1997**

**Cecil W. Crowson**
**Appellate Court Clerk**

| | | |
|---|---|---|
| **ANDREW D. MITCHELL and wife,** | ) | |
| **VIRGINIA K. MITCHELL,** | ) | |
| | ) | |
| Plaintiffs/ Appellants, | ) | Cannon Circuit No. 2960 |
| | ) | |
| **v.** | ) | |
| | ) | Appeal No. 01A01-9605-CV-00226 |
| **MELVIN C. RENO and wife, ALTA M.** | ) | |
| **RENO, and EDDIE ALFORD,** | ) | |
| | ) | |
| Defendants/Appellees, | ) | |
| | ) | |

APPEAL FROM THE CIRCUIT COURT OF CANNON COUNTY
AT WOODBURY, TENNESSEE

THE HONORABLE ROBERT E. CORLEW, III, JUDGE

For the Plaintiffs/Appellants:        For the Defendants/Appellees:

John B. Melton, III              Frank Buck
Murfreesboro, Tennessee      Smithville, Tennessee

**AFFIRMED**

HOLLY KIRBY LILLARD, J.

CONCURS:

W. FRANK CRAWFORD, P.J., W.S.

DAVID R. FARMER, J.

**OPINION**

This is a boundary line case. The litigants are adjacent landowners. Appellants initiated proceedings against Appellees for the wrongful cutting of timber. Appellees then filed a counter-claim asking the trial court to establish the boundary between the adjacent tracts of land. The trial court established the boundary line in favor of Appellees but found that Appellants were entitled to damages for timber cut from their property. We affirm.

In 1995, Appellants Andrew D. and Virginia K. Mitchell ("Mr. and Mrs. Mitchell"), purchased a tract of land in Cannon County, Tennessee. In 1988, Appellees Melvin and Alta Perkins Reno ( "Mr. and Mrs. Reno") purchased an adjacent tract of land from Mrs. Reno's mother, Pearl Perkins. Defendant Eddie Alford is the timber cutter the Renos hired to cut timber on the land in dispute.

Both the Renos and the Mitchells claim ownership of a 23 acre tract of land along the border of their properties. The land in dispute is extremely steep and uneven and cannot be cultivated. The only economic use for the land appears to be for timber cutting. Near the southern boundary of the property in dispute is a unique geological formation known as a "windcave" or "blowhole." During winter, water flowing from the windcave unites with the cool air, forming a thick bank of fog which rises into the air above the blow hole. This creates the effect of smoke rising.

The initial deeds covering the property in question date back over 100 years and provide for specific distances and courses in the description of the real estate. However, these descriptions disappear in deeds executed after in 1911. More recent deeds describe the land by reference to adjacent tracts of land.

Two fences are located on the disputed tract, and those two fences form the northern and southern boundaries of the disputed territory. Generally, the Mitchells' land lies to the south of the land owned by the Renos. The Mitchells contend that the northern fence is the correct boundary line; the Renos claim the southern fence as the correct boundary. It is undisputed that an accurate survey of the land, following only the courses and distances referred to in the old deeds, establishes the boundary along the northern fence row and in favor of the Mitchells' claim.

The Perkins, Mrs. Reno's parents, owned the property from 1922 until it was sold to the Renos in 1988. For a period of over 30 years, from the 1940's to the early 1970's, the Perkins occupied and used the disputed land and operated as though the boundary was the southern fence line. During that time, Mr. Perkins cut timber on the land and parceled out the land for

sharecropping. Melvin Reno testified that, during that period, he had cut timber on the property at the direction of Mr. Perkins and had also made repairs to the southern fence row. From the early 1970's until December, 1993, the disputed land was not used for grazing, cultivation or harvesting of crops or for any other purpose that would indicate a possessory interest by any party.

Harold Foster was reared on the Mitchell property, and he testified that the windcave was located on the tract now owned by the Renos. Other witnesses testified that it was generally believed in the community that the windcave was located on land belonging to the Renos and their predecessors in title.

In 1966, O.B. Harper bought from a Mr. Duke the tract of land now owned by the Mitchells. Duke did not know the location of the boundary; therefore, prior to the sale, Duke, O.B. Harper, Jim Perkins, Mr. Stacey, who was Perkins' sharecropper, and Norris Perry went onto the property. At that time, Duke and Perkins, the property owners, ascertained and agreed upon the boundary line. The men set an iron pin in the ground near a maple tree and set the boundary as an imaginary line running from the maple tree to the fence, along the southern fence row to the western side of the disputed land to a point where the Underwood, Duke and Perkins properties met. The pin is still in place, and a photograph of the pin was introduced at trial. All those present at the time the boundary was established in 1966 have died except for Norris Perry. At trial, Mr. Perry testified as to the existence of the 1966 agreement among the landowners.

After considering the evidence, the trial court determined that the evidence of both the 1966 agreement and the possession and use of the land by prior owners preponderated over the courses and distances descriptions contained in the older deeds. Therefore, the trial court determined that the boundary line between the Mitchell and Reno tracts was that asserted by the Renos. Nonetheless, the trial court found that Alford and Reno had cut some timber belonging to the Mitchells and awarded the Mitchells a judgment against Alford and the Renos for $4,800.00. The Mitchells now appeal the decision of the trial court.

On appeal, the Mitchells argue that the decision of the trial court is contrary to the preponderance of the evidence. Our review of this case is *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Absent error of law, the trial

court's decision will be affirmed, unless the evidence preponderates against the factual findings. Tenn. R. App. P. 13(d). No presumption of correctness attaches to the trial court's conclusions of law. *See Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995).

The Mitchells argue that the trial court erred in recognizing the boundary line established in the 1966 agreement. They maintain that a boundary was established by a deed dated in 1878 and recorded in 1881. They argue further that the same boundary was established by a court sale in 1905 and set forth in a deed recorded in 1908. Therefore, the Mitchells assert that the Renos had notice of the correct boundary line. In Tennessee, adjacent property owners may establish their boundary lines by agreement when there is no certain and established line known to them. *King v. Mabry*, 71 Tenn. (3 Lea) 237, 245 (1879); *Franks v. Burks*, 688 S.W.2d 435, 438 (Tenn. App. 1984); *Winborn v. Alexander*, 279 S.W.2d 718, 726 (Tenn. App. 1954). The Mitchells contend that since there was an established boundary line, the previous landowners could not establish a different boundary line by oral agreement in 1966. However, even if the previous landowners could have easily ascertained the correct boundary, the testimony at trial established that they in fact did not know the boundary, and entered into the 1966 agreement in order to resolve the dispute. Such an agreement may be enforced where there was an "honest ignorance" among the landowners regarding the location of the boundary. *Galbraith v. Lunsford*, 87 Tenn. 89, 98-99, 9 S.W. 365, 368 (1888).

Generally, contracts and agreements concerning real estate are governed by the Statute of Frauds and must be reduced to writing. However, oral agreements governing disputed boundary lines are not subject to the Statute of Frauds, and such agreements are binding upon the parties and their successors in ownership. *Franks v. Burks*, 688 S.W.2d at 438; *Thornburg v. Chase*, 606 S.W.2d 672, 674 (Tenn. App. 1980); *Webb v. Harris*, 315 S.W.2d 274, 277 (Tenn. App. 1958). The oral agreements need not be reduced to writing in order to be binding. *Webb*, 315 S.W.2d at 277. Parties to oral agreements establishing property lines and their successors are estopped to question the line so established even if it is determined afterward that the line was erroneously fixed. *Galbraith*, 87 Tenn. at 99, 9 S.W. at 368; *Hendrix v. Yancy*, 355 S.W.2d 453, 460 (Tenn. App. 1960); *Rogers v. S.W. Taylor & Co.*, 2 Tenn. App. 445 (1926). Parties are bound by the acts and

3

declarations of their predecessors in title. As the Tennessee Supreme Court stated in ***Davis v. Jones***, 40 Tenn. (3 Head) 602, 606 (1859):

> We understand, that for purposes of ascertaining the true line of a disputed and uncertain boundary between adjacent tracts, the acts and declarations of the former owners and proprietors, which took place and were made during such ownership, especially if accompanied with possession, conducing to establish the common line, are admissible as original evidence. [Citations omitted.] This is so, whether they be dead or alive, admissible or inadmissible as witnesses in the controversy. They do not stand upon the same footing as the declarations of third persons. [Citations omitted.]

***Id.*** at 606; ***See also***, ***Norman v. Hoyt***, 667 S.W.2d 88, 90 (Tenn. App. 1983).

In this case, Norris Perry testified that he was present in 1966 when the previous property owners, Mr. Duke and Jim Perkins, in the presence of Harper, Stacey and Perry, ascertained and agreed upon the boundary line. To memorialize their agreement, the men planted an iron stake in the ground at the base of a maple tree and declared that the boundary line between their property should run from that pin to the southern fence, along the fence row above the windcave and back to the western side of the disputed property to the corner where the Underwood, Duke and Perkins properties met.

Declarations of former owners which took place during their ownership, especially when accompanied with possession, are admissible to establish boundary lines. Such declarations may be testified to by third parties who heard the declarations. ***Davis v. Jones***, 40 Tenn. (3 Head) at 606; ***Norman v. Hoyt***, 667 S.W.2d at 90. In this case, Mr. Perry was competent to testify as to the existence of the oral agreement regarding the ownership of the disputed property. Therefore, the agreement between Perkins and Duke is binding on their successors in title. ***See Winborn v Alexander***, 279 S.W.2d at 727. Consequently, the trial court did not err in finding the 1966 agreement binding upon the Mitchells and the Renos as successors in title to Duke and the Perkins.

The testimony of residents in the surrounding community further supports the determination of the trial court. Harold Foster, a previous resident of the Mitchells' tract, and other members of the surrounding community testified that the windcave was located on the tract now owned by the Renos. Norris Perry, who worked on the land for O.B. Harper, the Mitchells' predecessor in title, testified that the windcave was located on the tract formerly owned by the Perkins and now owned by the Renos.

Upon review of the record, we cannot find that the evidence preponderates against the

4

determination of the trial court. Despite the courses and distances set forth in the old deeds, as well as the more recent boundary deeds, the undisputed testimony at trial established that the parties' predecessors in title were uncertain as to the boundary between the properties and resolved the dispute by agreement. Further testimony established that the boundary in the 1966 agreement was regarded as the boundary by the parties and the surrounding community. Under these circumstances, we find that the evidence does not preponderate against the decision of the trial court.

The decision of the trial court is affirmed. Costs should be taxed against the Appellants, for which execution may issue if necessary.


_____
_____**HOLLY KIRBY LILLARD, J.**


**CONCUR:**


_____
**W. FRANK CRAWFORD, P.J.,W.S.**


_____
**DAVID R. FARMER, J.**

5