IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
February 3, 2010 Session

## CHARLES C. BURTON v. BILL J. DUNCAN ET AL.

**Appeal from the Chancery Court for Lincoln County**
**No. 12700     J. B. Cox, Chancellor**

_____

**No. M2009-00569-COA-R3-CV - Filed April 28, 2010**

_____

The matter at issue is a sliver of land between an old established fence and the centerline of a rural road. The plaintiff and the defendants each contend they own the disputed property. The plaintiff claims his property, which lies west and southwest of the defendants' property, extends beyond an old established fence in a northeasterly fashion to the center line of Old Lincoln Road. The defendants, however, claim their property extends across the road to the old established fence which, the defendants insist, is also where the plaintiff's property ends. Following a bench trial, the trial court found that the "old established fence" referenced in the plaintiff's deed is the boundary line, as the defendants claim, not the centerline of Old Lincoln Road, as the plaintiff claims, and therefore, the defendants own the disputed property. We have concluded that the trial court correctly determined the plaintiff's property stopped at the "old established fence." Thus, we affirm that decision. We, however, have determined that the trial court erred by awarding the disputed property to the defendants. This is because the defendants' deed clearly states that their property stops at the center line of Old Lincoln Road and nothing in the deed suggests their property extends beyond that point. Accordingly, we reverse the trial court's finding that the defendants' property extends beyond the centerline of Old Lincoln Road. As a consequence, neither party has established that they own the disputed property. Furthermore, we have determined that others who are not parties to this action may have a claim to the disputed property; thus, ownership of the disputed property will need to be determined in a subsequent action in which others who are possibly indispensable parties are joined.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed in Part, Reversed in Part**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Thomas F. Bloom, Nashville, Tennessee, for the appellant, Charles C. Burton.

John H. Richardson, Jr., Fayetteville, Tennessee, for the appellees, Bill J. Duncan and Myrtle H. Duncan.

## OPINION

Plaintiff, Charles Burton, filed this action on June 11, 2007, against his neighbors, Bill and Myrtle Duncan, to determine the boundary line between his property and their property. The Duncans denied all of Burton's claims and asserted that an old established fence is the boundary monument, which was treated as the boundary for years by Willie Edward Burton, the plaintiff's predecessor in title, and the Duncans. Therefore, the Duncans contend that the correct boundary line would be the old established fence along an "old roadbed" and not the centerline of the "new roadway." The sliver of property at issue runs along a portion of Burton's northeast boundary and a portion of the Duncans' southwest boundary.

### THE DUNCANS' PROPERTY

The Duncans' acquired their property from W.R. Patrick; it consists of two tracts that total approximately 94 acres. The legal description of the tract at issue reads as follows:

FIRST TRACT OR PARCEL: BEGINNING at a rock at the East end of a shop once owned by George Porter, now a corner of the lands of R.M. Koonce, and running from thence South 3 degrees West 20 poles to a rock; thence South 49 degrees East 26 poles to a rock in a road; thence South 45-1/2 degrees east 32 poles, with said road, to a rock; thence South 54-1/2 degrees East 45 poles, to a rock in said road; thence North 35 degrees East 41 poles to a mulberry, with pointers, thence North 72-1/4 degrees East 28 poles to a rock, with pointers, thence South 57-1/2 degrees East 37 poles to a small persimmon, with pointers; thence East 14-3/4 poles to a chestnut stump, with pointers; thence North 73-1/4 degrees East 50 poles to a rock at a fence; thence North 11 degrees West 25 poles to a rock in the South boundary line of the lands at one time owned by W.T. Grills, but now owned by Mrs. Sallie Stewart; thence North 62 degrees West 127 poles to a white-oak; thence North 87 degrees West 19-1/2 poles to a dogwood; thence South 4 degrees West 48 poles to a rock in a field; thence North 87 degrees West 95 poles to the beginning, containing 90-1/4 acres, be the same more or less.[1]

---

[1]The deed from Patrick to the Duncans also contained the description of a second tract that is not relevant to this action.

The plaintiff, Charles Burton, inherited a 60-acre tract from his uncle, Willie Edward Burton.[2] The plaintiff's title to the property is evidenced by a quitclaim deed conveyed to him by the Executrix of his uncle's estate dated July 26, 2006. His uncle acquired the property in 1969 from Autry E. Pitts. The 1969 deed and the 2006 deed contain the identical general boundary description, which reads:

> Bounded on the North by Road and Patrick; bounded on the [South] by Dunn; bounded on the East by Moore, Howell, and an old established fence; and bounded on the West by Koonce and Wallace; and containing by estimation 60 acres, be the same more or less.

The plaintiff's 60-acre tract derives from a 74-acre tract owned by L.H. Williams. In 1963, Mr. Williams partitioned 60 acres out of the 74-acre tract and conveyed the 60-acre tract to J.L. Raby by warranty deed. The 1963 deed to Raby is referred to as the "Parent Deed." The 14 acres that remained from the formerly 74-acre tract was later conveyed by Williams to Terry Raby. The Williams to Terry Raby deed of the 14-acre tract provided the legal description of the entire 74-acre tract, in a metes and bounds description, but it also expressly excluded from the conveyance the 60-acre tract previously conveyed to J.L. Raby by setting forth the identical general boundary description found in the deed foregoing from J.L. Raby to Pitts.

J.L. Raby subsequently conveyed the 60-acre tract to Autry E. Pitts using a general boundary description. The same general boundary description was subsequently used in the 1969 deed from Pitts to W.E. Burton and the 2006 quitclaim deed to the plaintiff, Charles Burton.

## EVIDENCE PRESENTED AT TRIAL

A bench trial was held on October 28, 2008, during which the plaintiff, Charles Burton, introduced the testimony of his surveyor, Paul Braden, who had surveyed Burton's property. Braden testified that the disputed property "lies southwesterly of the existing Old Lincoln Road across a stream or creek and extending to an existing wire fence." Braden also testified that as he conducted his survey, he relied upon Burton's deed, deeds to adjoining

---

[2]Mr. Burton's uncle, Willie Edward Burton, had originally owned the property along with his wife, Mary Alice Burton, as a tenancy by the entirety; however, Mrs. Burton quitclaimed her interest in the property to Willie Edward Burton in a deed dated October 3, 2002. After W. E. Burton's death, his executrix deeded the 60-acre tract to the plaintiff, Charles Burton.

properties, tax maps, and old plats. During his search for deeds, Braden discovered the "Parent Deed" to the 74-acre tract, which contained a metes and bounds description. Braden testified that he platted both the general boundary description stated in Burton's deed and the metes and bounds description in the Parent Deed, after which he discovered disparities as to the acreage.[3] After applying rules of evidence used by licensed surveyors, and using "monument calls" in the metes and bounds deed, which called for points in the "road," Braden concluded that Mr. Burton's property extended to the centerline of Old Lincoln Road.

The Duncans presented the testimony of their surveyor, Knox Smith, who they had hired to survey Burton's property. Smith, however, was not hired to perform a survey of the Duncans' property. He testified that he focused solely on the boundary line to Burton's property and he concluded that Burton's property did not extend to Old Lincoln Road; instead, Burton's property was bounded on the northeast by the old fence, which was several feet southeast of Old Lincoln Road. Smith also concluded that the "road" referred to as the northern boundary of Burton's property was not Old Lincoln Road, but an old rock quarry road north of the disputed strip of land, which is still used by Burton as the access road to his property. Smith testified that his decision was based upon the language contained in Burton's deed as well as a survey performed in 1999 by Rex Northcutt, which found the center of the old rock quarry road, not Old Lincoln Road, was the boundary line on the north tip of Burton's property.[4] Smith also testified that he "tied into" the survey performed by Braden and Northcutt's 1999 survey in making his determination that the old established fence was the northeast boundary of Burton's property. As for the Duncans' contention that an old roadbed used to exist between the fence and Old Lincoln Road, Smith stated that he and his crews found no physical evidence of that road.[5] Further, Smith testified that he was of the opinion that the Duncans' southwestern property line was not the old fence, but the centerline of Old Lincoln Road. Moreover, Smith testified that a gap existed between Burton's property and the Duncan's property if, as he had concluded, the old established fence was the northeast boundary line of Burton's property, and the center of Old Lincoln Road was the southwestern boundary line of the Duncans' property.

On February 5, 2009, the trial court issued its Memorandum Opinion stating the

[3]Braden testified that when surveying property that has been partitioned, and that property appears to have irregularities or ambiguities, surveyors often look to the deed predating the partition.

[4]Braden disagreed with Smith's determination, and stated that he rejected the old gravel roadway, located in the extreme northwest corner of the property as the northern boundary, because the description of the property contained in the "Parent Deed" went beyond that roadway and because the road was still in existence.

[5]Burton's surveyor, Paul Braden, also testified that he found no evidence of an old roadbed.

following findings and conclusions. The trial court rejected the survey by Paul Braden, Burton's expert, finding that Braden's survey "evinces an obvious preference of courses and distances above monuments in light of a boundary deed with a general description lacking metes and bounds." The court found that the old established fence constituted the northeast boundary line of Burton's property. The trial court also found that Burton's predecessor-in-title, his uncle, had acquiesced to the fence as the boundary line and found that "this acquiescence has occurred for such an extended period of time that it should be deemed by the Court to be conclusive." This appeal by Mr. Burton followed.

## ANALYSIS

Mr. Burton asserts that the trial court erred in determining that the old established fence constituted the boundary of line of the neighboring tracts instead of the centerline of Old Lincoln Road. He also contends that the trial court erred in applying the doctrine of title by acquiescence because the parties had stipulated that acquiescence and adverse possession were not issues.

## TITLE BY ACQUIESCENCE

We agree with Mr. Burton that the trial court erred by considering the doctrine of title by acquiescence in making his decision because the parties stipulated in open court that the theory was not at issue in the trial, which the trial court acknowledged. The following is an excerpt from the trial transcript concerning the stipulation:

> The Court: And the question for you all because my understanding from the beginning is it's only a boundary dispute between neighbor and owners. There is no allegation of acquiescence or adverse possession that has been pled that can be cause for recovery. That's exactly the question I just asked you. I said will you stipulate that if court finds the boundary to be the fence, that you have no other recovery, or if the court finds the boundary line to be the road, will you have no other recovery.
>
> Mr. Richardson: Yes.
>
> Mr. Self: I agree with that, your Honor.
>
> The Court: So anything other than what informs to the boundary itself and definition of the boundary itself between these owners would be irrelevant.
>
> Mr. Self: That's our position, your Honor.

-5-

Mr. Richardson: Yes.

The Court: So the shorter the better in terms of those things relative to the boundary. *I am not going to allow* – let me say it clearly on the record. It is not anticipated by the pleadings or by anything that the court has heard in the proof and would otherwise allow *into proof* based on the pleadings consistent with Rule 13 of the Rules of Tennessee – the Tennessee Rules of Civil Procedure *that adverse possession could be a basis for recovery, nor could title by acquiescence be a basis for recovery. The only issue we are trying is where's the boundary.*

Mr. Richardson: *You've hit it on the head, Your Honor.*

Mr. Self: *That's correct, your Honor . . . .*

As stated above in open court, the parties agreed that acquiescence and adverse possession were not at issue and could not be a basis for recovery. While evidence was introduced at trial regarding the actions taken by Mr. Burton's uncle, as well as the opinions of neighbors regarding the location of the boundary line of the property, the trial court stated that it would only be allowed for the purpose of determining "the boundary line." The stipulation announced in court by the trial judge and counsel for both parties is unequivocal. Therefore, we agree with the plaintiff that the court may not consider evidence as it pertains to adverse possession or title by acquiescence.

THE BOUNDARY LINE(S)

"When determining a boundary line that is in dispute, the court must look first to the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent pieces of property, and finally to courses and distances contained in documents relevant to the disputed property." *Mix v. Miller*, 27 S.W.3d 508, 513 (Tenn. Ct. App. 1999) (citing *Franks v. Burks*, 688 S.W.2d 435, 438 (Tenn. Ct. App. 1984); *Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980)).

In an appeal from a trial court's decision in a boundary line dispute, the appellate court conducts a de novo review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40

S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). We also give great weight to a trial court's determinations of credibility of witnesses. *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). Mixed questions of law and fact are subject to a different standard of review. *Bubis v. Blackman*, 58 Tenn. App. 619, 435 S.W.2d 492, 498 (Tenn. Ct. App. 1968).

### THE DUNCANS' PROPERTY

We will first examine the legal description to the Duncans' property and the testimony in the record that identifies the Duncans' southwest boundary line.

Contrary to the trial court's finding, the evidence in the record clearly and convincingly indicates that the Duncans' boundary line is the center of Old Lincoln Road, not the old established fence. This is evident from the express language in the Duncans' deed. It is also the opinion of both surveyors, including Knox Smith, the Duncans' surveyor. Mr. Burton's surveyor also testified that the Duncans' deed clearly called for "a road" as the Duncan's boundary, and in spite of the Duncans' assertion, there is no evidence of a second road, the "old roadbed," they claim exists. Knox Smith also testified that he looked in the disputed area for an old roadbed and found no evidence of an old roadbed. Both surveyors testified that even if a road is overgrown with vegetation, it is not difficult to find evidence that a road once existed. Further, and most importantly, both surveyors stated that the Duncans' southwest boundary line was the centerline of Old Lincoln Road, not the old established fence.

The evidence clearly demonstrates that the Duncans' deed calls for their boundary line to be the centerline of Old Lincoln Road and there is no evidentiary basis upon which to conclude that the Duncans's own any portion of the disputed area. Accordingly, we reverse the part of the trial court's judgment by which it held that the Duncans owned the disputed property.

### MR. BURTON'S PROPERTY

The fact that the Duncans do not own the disputed property does not necessarily mean that Mr. Burton owns the property. Therefore, the location of the northwest boundary line of

Mr. Burton's property must be determined. Is it the old established fence, as the deed to Charles Burton states, or is it the center of Old Lincoln Road as the 1963 Parent Deed from Williams to J.L. Raby states?

As the trial court correctly announced, the proper starting point for a determination of Burton's property is the general boundary description in his 2006 deed, not the metes and bounds description in the Parent Deed. The legal description in Burton's deed clearly references "an old established fence" as the eastern boundary line of his property and it makes no reference to a point in Old Lincoln Road.

Burton's surveyor, Paul Braden, testified that he did not consider the fence as a boundary and did not rely upon Mr. Burton's deed; instead, Braden relied on the metes and bounds description contained in the Parent Deed, as stated in the 1963 deed to the 74-acre tract. The fallacy in this approach is that Mr. Burton has never owned the 74-acre tract and the legal description in the deed conveying the 60-acre tract to Burton clearly states that an "old established fence" is his boundary line. Thus, we agree with the trial judge that Paul Braden's opinion on this issue is in direct conflict with the clear language of the legal description in Mr. Burton's deed. The trial court gave great weight to the testimony of Knox Smith, who placed more emphasis on the plain language of the general boundary deed, as well as a survey performed in 1999 by Rex Northcutt, which explained that the reference to a road was a reference to an old rock quarry road on the northern tip of the Burton property, not the northeast boundary at issue here. Based upon these facts, Smith determined that the old established fence was the northeast boundary line of Mr. Burton's property, not the center of Old Lincoln Road.

Mr. Burton's deed derives from a partition of 60 acres out of the original 74-acre tract owned by Mr. Williams and then Mr. Raby. Raby carved a 60-acre tract out of the larger tract to convey 60 acres to Pitts using a general boundary description, not a metes and bounds description. The legal description of the 60-acre tract provides a very different description of the northeast boundary than the description of the northeast boundary in the Parent Deed. More importantly, the description of the 60-acre tract in the deed to Mr. Burton clearly identifies "an old established fence" as the eastern boundary. That fact and the persuasive testimony of Knox Smith cannot be ignored.

The trial court made the finding that the old established fence was the boundary line of Burton's property. The evidence does not preponderate against that determination; in fact, it fully supports that decision. Accordingly, we affirm the trial court's determination that the old established fence constitutes the northeast boundary line of Mr. Burton's property.

<u>No-Man's Land</u>

We recognize that our holding creates a so-called "no-man's land" concerning the sliver of property at issue in this action. We regret that fact, but it was the duty of the court to determine the boundary line of the Duncans' property and the boundary line of Mr. Burton's property. We have done that. The fact that the disputed property does not lie within the litigants' respective boundaries is problematic. The record suggests there may be others who own or have a claim to the disputed property, but the record is not sufficient to permit us to determine who owns the disputed property. Moreover, the resolution of that issue may require that others, who are not parties to this action, are essential parties to such a determination; accordingly, they may be indispensable parties, which prevents this court from making that determination. Accordingly, we make no decision concerning who may own the disputed property. Our decision is limited to the determination of the respective boundary lines of Mr. Burton's and the Duncans' property.

## In Conclusion

The judgment of the trial court is affirmed in part and reversed in part, and this matter is remanded with costs of appeal assessed against the parties equally.

_____
FRANK G. CLEMENT, JR., JUDGE