IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 10, 2011 Session

## MICHAEL C. DRESSLER ET AL. v. EDWARD BUFORD

**Appeal from the Chancery Court for Clay County**
**No. 3823     Ronald Thurman, Judge**

_____

**No. M2010-00844-COA-R3-CV - Filed June 27, 2011**

_____

This is an action to establish the common boundary line between adjacent property owners. Following a four-day bench trial, the trial court adopted Plaintiffs' survey to establish the parties' common boundary line. Defendant appeals arguing that the evidence preponderates against the trial court's findings. Finding the evidence does not preponderate against the trial court's numerous findings, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

FRANK G. CLEMENT, JR., J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, P.J., M.S., and RICHARD H. DINKINS, J., joined.

John R. Officer, Livingston, Tennessee, and Craig P. Fickling, Cookeville, Tennessee, for the appellant, Edward Buford.

Bruce E. Myers, Livingston, Tennessee, for the appellees, Michael C. Dressler and wife, Myra L. Dressler.

**OPINION**

Plaintiffs, Michael and Myra Dressler, husband and wife, filed this action against an adjacent landowner, Edward Buford, to determine the common boundary line. The boundary line at issue is Plaintiffs' northern boundary and Defendant's southern boundary. The property at issue is located in Clay County, Tennessee, and is heavily wooded and hilly.

Defendant acquired a one-half interest in his property, consisting of two tracts of land, in 1963; he acquired sole title to the two tracts in 1964.[1] Plaintiffs acquired their property in 2004 from Richard and Avo Hall. Following the purchase of their property, Plaintiffs hired Larry Jackson, a licensed surveyor, to survey the property. Mr. Jackson determined that Plaintiffs' property consisted of 41.59 acres. Wanting to own a 50-acre tract, Plaintiffs contacted neighboring landowners about acquiring additional property. Defendant was one of the landowners contacted.

At Plaintiffs' request, Defendant met Michael Dressler (individually referred to as "Plaintiff")[2] and his surveyor, Mr. Jackson, on November 6, 2004. During the meeting it became apparent that they disagreed about the location of their common boundary line. Mr. Jackson showed Defendant where he believed the boundary line was located, but Defendant insisted it was incorrect. Moreover, Defendant was adamant that he knew the correct boundary line although two earlier surveys of his property were not in accord with his view of the boundary line. Thereafter, tensions arose, especially after Plaintiff and Defendant each erected fences that arguably encroached on the other's property. In 2006, Defendant hired Carlen Wiggins, Jr., to survey his property. Mr. Wiggins determined that the boundary line of Defendant's property was very close to where Defendant had erected his fence.

On June 16, 2006, Plaintiffs filed this action in the Chancery Court for Clay County to establish the boundary line based on Mr. Jackson's survey. Defendant filed a counter-complaint seeking to establish the boundary line based on Mr. Wiggins' survey; he also sought damages for trespass. A bench trial was held over a period of four days on September 29-30, 2009, and January 27-28, 2010. Numerous witnesses testified including neighboring landowners, the parties, and the two surveyors.

Plaintiffs' surveyor, Mr. Jackson, testified that he began his survey by researching deeds on the surrounding properties, including Defendant's property. In his research, Mr. Jackson also located two surveys performed on surrounding properties, a survey performed on the Dillon property to the west of the parties' property, and a survey performed on the Davis property to the east. Using the surveys and deeds as references and after viewing the property, Mr. Jackson determined the boundaries of the parties' property. He explained that he relied significantly on the calls in Defendant's deed and the Davis survey, which was on the property to the east, which used a twenty-four inch hickory tree as a marker between that

---

[1]Defendant originally purchased the property with James Bailey. One year later, in 1964, James Bailey and his wife transferred their interest in the property to Defendant.

[2]Mrs. Dressler did not participate in these meetings and she did not testify; thus, all references to Plaintiff, individually, are to Michael Dressler.

property and the parties' property. After locating the hickory tree, Mr. Jackson located old hack marks and red paint on trees, and an old fence, which were located along a small hollow.[3] Further along the property line, Mr. Jackson located more red paint, though no hack marks. Mr. Jackson also noted the presence of a large forty-eight to fifty-inch oak along this line, which corresponded to a call in the Plaintiffs' deed. The tree did not have any marks on it, but the fence ran alongside the tree. Mr. Jackson believed this line was the northern boundary of the Plaintiffs' property with Defendant's property, which he stated matched the description contained in Defendant's deed.

Plaintiff Michael Dressler also testified regarding what he believed to be the boundary line with Defendant's property. He claims that Mr. Jackson showed him the property line following the completion of the survey and that he observed the paint and old hack marks on the trees, as well as the remnants of an old fence. Plaintiff stated that he added his own new hack marks to some of the trees, and that later, following the dispute with Defendant, several of the trees no longer had the old hack marks, but had slices where the hack marks had been removed from the trees. Plaintiff stated that on the day Defendant, Mr. Jackson, and he walked the property, he did not see, nor did Defendant point out, any pins marking the boundary line along the line that Defendant claimed. Plaintiff also testified that Defendant changed his opinion as to the location of the boundary line on several occasions.

Defendant's surveyor, Carlen Wiggins Jr., testified that he was hired by Defendant in 2006 to survey the disputed area. Mr. Wiggins stated he began the survey by looking to the descriptions contained in Defendant's deed, Plaintiffs' deed, and the deeds of surrounding properties. Mr. Wiggins then looked for the natural landmarks referenced by Defendant's deed. Mr. Wiggins stated that many of the trees referenced, including the black oak, were not present, because the timber on the land had been logged. Mr. Wiggins stated that he did not see the large oak referenced in Plaintiffs' deed and testified to by Mr. Jackson. According to Mr. Wiggins, the location of Muddy Hollow and Still House Hollow were different from where Mr. Jackson plotted them on the survey. After making his own determination of where the hollows were, Mr. Wiggins determined the property line was located along where Defendant had placed a steel pin (pole) after the boundary dispute had arisen to identify the location of the property line. Based upon the above, Mr. Wiggins determined the boundary line was very close to the fence that Defendant had erected on his property. Mr. Wiggins admitted that his survey differed from a survey previously prepared by his father, Carlen Wiggins Sr., that marked a different boundary.

---

[3]Plaintiff later testified that the hack marks shown to him by Mr. Jackson along the boundary had been cut out of the trees.

Defendant testified that the boundary line was near where he erected his gate. He acknowledged that a previous survey of his land performed by Robert Wells in 1992 identified a different property line. He also admitted that Mr. Wells's survey was similar to the survey of Carlen Wiggins, Sr.; nevertheless, Defendant insisted that Mr. Wells's 1992 survey and the survey by Mr. Wiggins, Sr., were incorrect. Defendant also testified that he disagreed with the location of Still House Hollow and Muddy Hollow as they appeared on Mr. Jackson's survey; he also disagreed with the basis of Mr. Jackson's survey. Defendant admitted to placing the iron pin in the ground along what he believed to be his boundary line, which was the pin relied upon by Mr. Wiggins, Jr., in his survey.

The trial court issued its findings of fact and conclusions of law on February 2, 2010. The trial court first addressed the proof regarding the natural landmarks found on the properties, noting that there was some dispute as to the location of certain hollows that were referenced in both Defendant's deed and Plaintiffs' deed, specifically the location of Still House Hollow. The court found that there was no evidence of the original pins referenced in the deeds, but there was evidence presented of hack marks on certain trees that would evidence a property line. What the court found to be most significant were the two prior surveys of the neighboring properties and the presence of a twenty-four inch hickory tree located at the northeast corner of the Plaintiffs' property and the southeast corner of the Defendant's property. The trial court also stated that it did not place "a lot of credence" on the survey performed by Mr. Wiggins, because of the failure to include the large oak, which the court stated "stuck out like a sore thumb," and the contradiction between the testimony of Mr. Wiggins and Defendant. Further, the court questioned the accuracy of Mr. Wiggins's survey due, in part, to changes made to the survey following Defendant disagreeing with the survey and because the survey was based upon the location of a pin that was placed by Defendant after the property line dispute arose.

A Final Decree was entered on March 1, 2010, in which the court reiterated its finding that the boundary line between Plaintiffs' property and Defendant's property would be the boundary as surveyed by Larry Jackson. An amended final judgment was filed on October 26, 2010.

Defendant filed a timely appeal contending that the trial court erred in finding that Plaintiffs' survey more accurately depicted the boundary line that separates the parties' properties. More specifically, Defendant contends that the trial court erred by ignoring the natural landmarks, which are to be considered first in resolving a boundary line dispute, and that the evidence preponderates against the trial court's findings.

**STANDARD OF REVIEW**

In an appeal from a trial court's decision in a boundary line dispute, the appellate court conducts a de novo review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. *Wood v. Starko*, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); *The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). Where the trial court does not make findings of fact, there is no presumption of correctness and we "must conduct our own independent review of the record to determine where the preponderance of the evidence lies." *Brooks v. Brooks*, 992 S.W.2d 403, 405 (Tenn. 1999). Issues of law are reviewed de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999). Mixed questions of law and fact are subject to a different standard of review. *Bubis v. Blackman*, 58 Tenn. App. 619, 435 S.W.2d 492, 498 (Tenn. Ct. App. 1968).

**ANALYSIS**

We start our review with Defendant's contention that the trial court ignored the natural landmarks, which led to the conclusion that Plaintiffs' survey, conducted by Mr. Jackson, accurately depicted the boundary line.

In cases involving a boundary line dispute, the court looks "first to the natural objects or landmarks on the property, then to the artificial objects or landmarks on the property, then to the boundary lines of adjacent pieces of property, and finally to courses and distances contained in documents relevant to the disputed property." *Mix v. Miller*, 27 S.W.3d 508, 513 (Tenn. Ct. App. 1999) (citing *Franks v. Burks*, 688 S.W.2d 435, 438 (Tenn. Ct. App. 1984); *Thornburg v. Chase*, 606 S.W.2d 672, 675 (Tenn. Ct. App. 1980)).

Having reviewed the record we find, contrary to Defendant's assertion, that the trial court followed the protocol in *Mix, Franks*, and *Thornburg* by considering the natural landmarks, and by doing so found that much of the evidence relating to the location of certain landmarks, such as Still House Hollow, was in dispute. Moreover, as its findings of fact reveal, the trial court made very detailed and relevant findings and considered those findings in reaching its conclusion. We acknowledge that some of the relevant evidence is controverted, due in part to logging and the loss of natural boundaries and landmarks due to the elements and passage of time; nevertheless, as stated above, we review the trial court's findings of fact with a presumption of correctness and will not disturb those findings unless the evidence preponderates against them. *Wood*, 197 S.W.3d at 257. For the evidence to

preponderate against the trial court's findings of fact, the evidence must support another finding of fact with greater convincing effect. *Walker*, 40 S.W.3d at 71; *The Realty Shop, Inc.*, 7 S.W.3d at 596. In this case, the evidence does not support another finding of fact with greater convincing effect; therefore, the trial court's findings of fact are deemed correct.

It is also very significant that the trial court made pertinent credibility findings that affect our review of the evidence. The trial court specifically questioned the credibility of Defendant. Moreover, the court questioned the reliability of the survey performed by Defendant's surveyor because that survey was, at least in part, based upon information provided by Defendant. In pertinent part, the trial court questioned the reliability of Mr. Wiggins's survey because, following a disagreement with Defendant, Mr. Wiggins revised his survey to comport with the location of pins that were placed after the property line dispute arose and to appease Defendant.

We give great weight to a trial court's determinations of credibility of witnesses, *Estate of Walton v. Young*, 950 S.W.2d 956, 959 (Tenn. 1997); *B & G Constr., Inc. v. Polk*, 37 S.W.3d 462, 465 (Tenn. Ct. App. 2000), and if the trial court's factual findings are based on its determinations of the credibility of witnesses, we will not reverse such determinations absent clear evidence to the contrary. *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995). This record does not contain clear evidence to the contrary; therefore, we have no reason to question the trial court's credibility findings and the conclusions drawn therefrom.

For the reasons stated above, we affirm the trial court's ruling in all respects.

### IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Edward Buford.

_____
FRANK G. CLEMENT, JR., JUDGE